Edward Dunbar O'BRIEN, Appellant,

v.

Frank SINATRA et al., Appellees.

No. 17752.

United States Court of Appeals
Ninth Circuit.
April 5, 1963.

Willedd Andrews, Los Angeles, Cal.,
for appellant.

Payson Wolff, Lawrence Parke Watkin, Everett B. Clary, Averill C. Pasarow, George Slaff, William A. C. Roethke, Robert E. Gordon, Kenneth E. Kulzick, Los Angeles, Cal., Herbert Schwab, Sol Rosenthal, Beverly Hills, Cal., Eugene D. Williams, Los Angeles, Cal., and Allen E. Susman, Beverly Hills, Cal., for appellees.

Gang, Tyre, Rudin & Brown, Loeb & Loeb, O'Melveny & Myers, Lillick, Geary, McHose, Roethke & Myers, Freston & Files, Los Angeles, Cal., Beilenson, Meyer, Rosenfeld & Susman, Beverly Hills, Cal., Pasarow & Spiegel, and George Slaff, Los Angeles, Cal., Bautzer & Grant, and Kaplan, Livingston, Goodwin & Berkowitz, Beverly Hills, Cal., of counsel, for appellees.

Before BARNES and JERTBERG, Circuit Judges, and FOLEY, Jr., District Judge.

ROGER D. FOLEY, Jr., District Judge.

Beginning in 1957, the appellant, appearing without counsel, brought three successive separate actions against Frank Sinatra and others, in the Court from which this appeal is taken, alleging infringement of copyrights. The three cases, brought against substantially the same defendants, each came on before a different District Judge, and in each instance motions to dismiss were granted. There has not been a trial on the merits. From the record before us, the alleged acts of infringement appear to be substantially the same in each case.

The complaint filed in the initial action, Civil No. 1161–57 PH, was dismissed with prejudice and without leave to amend for, among other grounds, failure to state a claim upon which relief could be granted. That judgment of dismissal was entered November 21, 1957.

The second action, Civil No. 43–59 TC, was filed in January of 1959, and was terminated by an order of dismissal without leave to amend, but without prejudice on June 29, 1959. Two of the grounds of

dismissal were the failure of the complaint to state a claim upon which relief could be granted and that the complaint was unintelligible.

The case before us was commenced on December 2, 1960. There followed a number of defense motions and on January 9, 1961, the appellant was ordered to file a supplemental pleading alleging in detail the infringements charged as to each defendant. Appellant filed a supplemental complaint consisting of some 67 pages. Defense motions, previously filed, were heard and the complaint and supplemental complaint were dismissed.

At this juncture, some four years from the commencement of the first case, for the first time, appellant appeared through counsel. So represented, appellant filed an amended complaint on March 7, 1961. Defense motions were considered at a hearing held April 18, 1961.[1]

1. Transcript, April 18, 1961.

"THE COURT: Before you proceed on this case, I notice that the plaintiff in a memorandum filed today says that it is necessary for the court to take this case in hand. I think that is the truest thing that the plaintiff has ever said. It is necessary for the court to take this case in hand.

"During the past week I went over the amended complaint again and I have come to the conclusion that the amended complaint does not state a claim. It consequently has to be dismissed.

"Two other courts have dismissed the plaintiff's complaint upon the ground it didn't state a claim. It is just possible that the plaintiff may have a cause of action. I don't know whether he does or not, but the plaintiff in this action, as in other litigation, has been hunting with a shotgun and just aiming a gun in the general direction and letting it go. I think it is time for him to get rid of his gun and get down to actual facts in the matter.

"I have been thinking about how the case could be handled. I don't want to deprive the plaintiff of his day in court. If he has got a cause of action against any of these defendants, I want him to be able to present it. I want to rule on it but I can't rule on it under the complaint that is before me at the present time."

\* \* \* \*

"The plaintiff in this case has taken a number of different transactions and included them in the complaint. The plaintiff says he has a copyright that the defendants have infringed, but there is absolutely no relationship between the defendants and the infringement."

(Tr. pp. 4–5)

\* \* \* \* \*

"THE COURT: I am going to drop all these parties except one, with the understanding that if you want to, you can file a separate suit for each one of the parties so dropped.

\* \* \* \* \*

"THE COURT: Mr. Andrews (plaintiff's counsel), you suggested the other day when you were here that if you had handled this case from the inception, you would have filed a separate action against each one of them rather than trying to join them all in one action."

\* \* \* \* \*

"Now, I don't care who you keep in this case, whether you keep Sinatra or keep Metro-Goldwyn-Mayer or whether you keep Loew's Incorporated. I don't care who you keep, but I am not going to litigate but one defendant at a time. If you reduce your complaint so that we have one defendant at a time, then maybe we can get something we can work on, but at the present time the complaint is so voluminous and includes so many matters that I can't make head nor tail of it.

"MR. ANDREWS: Your Honor, under the ruling of the court, I would like to keep the High Society—what is the name? Frank Sinatra and the suit involving the copyright by the play High Society, because I think that is one of the most flagrant violations we have before this court. \* \* \*

"THE COURT: You don't have to do that today, Mr. Andrews. You can think about this matter. You may decide you want to keep someone else. I don't mind that. If you want to use the picture High Society, I don't mind if you join in the case the man who produced High Society, the man who wrote High Society, the actor in High Society, just so you reduce your scope to one picture.

"MR. ANDREWS: Your Honor, as you well know, this case was filed in pro per.

"THE COURT: I know that.

"MR. ANDREWS: The statement I made the other day was this. If I had had the case first in my hands, as an attorney, I would concentrate at [on] one defendant at first. I feel that Frank Sinatra, Henry Sanicola, William Morris Agency, Dore Schary, et al., in the High

The transcript of April 18, 1961, reflects that over strong objections from appellees, who complained of being harassed by seemingly endless and expensive litigation, the Court below, after a painstaking examination of the record of this case and apparently of the two former cases, offered appellant another opportunity to attempt to state a claim that could be understood and tried. Appellant made the selection of both the picture and the defendants. Appellant suggested, and the Court ordered, that he file a second amended complaint, limiting the subject matter to the one motion picture "HIGH SOCIETY," and limiting the defendants to the persons associated with that picture, to wit: Frank Sinatra, Henry Sanicola, William Morris Agency, Metro-Goldwyn-Mayer, Inc., and Capitol Records, Inc.

On May 26, 1961, appellant filed "AMENDED COMPLAINT II FOR INFRINGEMENT OF COPYRIGHT AND UNFAIR COMPETITION."

The defendants named in the Amended Complaint II, filed May 26, 1961, included:

"Frank Sinatra, Henry Sanicola, William Morris Agency, Inc., Dore Schary, Sol Siegel, Metro-Goldwyn-Mayer, Inc., Samuel Goldwyn, Rudolph Monta, Joseph Pasternak,

Society cause of action, we would like to retain and proceed on that basis."

   *    *    *    *    *

"MR. ANDREWS: If your Honor will make an order as stated by the Court, we would like to continue and proceed against the cause of action involving Frank Sinatra, Henry Sanicola, William Morris Agency, MGM, and Capitol Records.

"THE COURT: On this one picture?

"MR. ANDREWS: Yes, High Society.

"THE COURT: If you will prepare the order and drop all the other defendants without prejudice—

"MR. ANDREWS: I will do that.

"THE COURT: —so that at some future time, if you are successful in this case, you may proceed against these other people."

   *    *    *    *    *

"MR. ANDREWS: * * * With your honor's order, then I will prepare a new complaint against the parties mentioned in connection with High Society.

"THE COURT: And drop the other defendants.

"MR. ANDREWS: Yes, sir.

"THE COURT: I want you to prepare a new complaint.

"MR. ANDREWS: In other words, file it and get a separate number?

"THE COURT: No, you can file it in this case. You don't have to pay another filing fee. But I want an amended complaint filed in which you only include the people who are directly connected with this picture High Society, and I want to you to set out in your complaint just how they are connected, what did they do.

"MR. ANDREWS: Yes, sir, we will do so * * *.

   *    *    *    *    *

"MR. ANDREWS: As I understand the order, I am to file an amended complaint only against the parties in connection with High Society.

"THE COURT: Yes.

"MR. ANDREWS: Now, then, in other words, we will have to finish that case one way or the other before we can file a new amended suit against the other defendants.

"THE COURT: No, I am going to dismiss as to the other defendants.

"MR. ANDREWS: Without prejudice?

"THE COURT: Without prejudice. Just as soon as you tell me what defendants you want to keep in this case, I will enter a dismissal as to the other case."

(Tr. pp. 6–13)

"THE COURT: The complaint is in such condition at the present time I cannot adequately dispose of it except to say that it doesn't state a claim and does not comply with the rule relative to a short concise statement of the claim. Consequently, by eliminating a large number of the defendants and a large number of the things that you say have been infringed and reducing it to one picture, we may be able to get some place where we can intelligently decide whether or not there is a cause of action here."

   *    *    *    *    *

"THE COURT: I prefer to handle all these matters at one time and I will dismiss all the defendants who are not named in this amended complaint, and if any of the defendants who are named want to have a dismissal, if they will come in and make a motion to dismiss, 1 will hear them, but I think that is a more orderly way to do it."

(Tr. pp. 17–19)

Harry Lillis Crosby, George Murphy, Cole Porter, John Patrick, Sammy Cahn, Nicholas Brodzsky, Helen Rose, George Wells, June Allison, Lauren Bacall, Gregory Peck, Broderick Crawford, George Seaton, Gordon Jenkins, Capitol Records, Inc., Warner Brothers Pictures, Inc., National Broadcasting Company, Inc., Columbia Broadcasting System, Inc., American Broadcasting Company-Paramount Theatres, Inc., Liggett & Myers Tobacco Company, Inc., Bulova Watch Company, General Motors Corporation, Decca Records, Inc."

Paragraph VIII of Amended Complaint II begins as follows:

"After July 12, 1955, defendants conspired and confederated, combined, concerted and agreed to infringe, and they have infringed said copyrights by copying and appropriating from manuscript and printed copies thereof and private letters of plaintiff referring thereto, submitted and communicated to defendants and retained in the possession of the defendants, and by marketing, exhibiting and selling to the general public against the will and secretly and without the consent, authority or license of the plaintiff, copyright proprietor, and by using the language, dialogue, wordings, writing, sequence, story, songs, lyrics, scenes, settings, costumes, characters, sense substance, point, purpose, expression and effect of the plaintiff's copyrighted writings and private letters the motion pictures: "High Society," "The Opposite Sex," "Designing Woman," "Wings of Victory," "The Joker is Wild," or " The Joker," "Royal Wedding," "Gigi," "Say One for Me;" the musical "Manhattan Tower;" the programs: "Entertainment Programs, National Conventions of 1956," the "Democratic Fund Raising Program, October 20, 1956," the "Frank Sinatra Show 1957–58" and the same May, 1960, and November, 1960, the "Bing Crosby Show," October, 1958 and September, 1959; the record album "Lover's Hour;" the songs: "11th Hour Melody" and "Mr. Success;" the play: "The Defender;" press releases; the "Academy Awards Ceremonies," 1957, 1958, 1959; broadcast: "Ed Sullivan Show," February, 1959, and reperformance of the motion pictures: "High Society," March 22–28, 1961, "Designing Woman," April 5–11, 1961, and re-broadcasts from the motion picture "High Society," March 5, 1961 and May 2, 1961, by and in the following manner and means:"

On June 27, 1961, after defense motions had been filed, a hearing was held.[2]

2. Transcript, June 27, 1961.

* * * * *

"THE COURT: I have waded through this file again. And I have before me another set of motions that raise the same issues that have been raised before. And I am about ready to dismiss this case· on several grounds. One ground is that you have failed to comply with Rule 8, which says that the plaintiff should file a short and plain statement of the grounds upon which the court jurisdiction depends, and a short and plain statement of the claim, showing that the pleader is entitled to relief.

"Now, I read that to mean a short and plain statement of the claim to be a statement that the court can understand. Now, I just can't understand this, I just can't understand it.

" * * * And you have not complied with the order of the court relative to stating one cause of action, but you have mixed up your causes of action, you have brought in everybody under the sun and I just don't see any sense in this."

* * * * *

"THE COURT: You know, Mr. Andrews, I want to know from your pleadings just what the claim was.

* * * * *

"THE COURT: Now, if you have got a song and you can say, well, now, the plaintiff is a writer and owner of a song, defendant infringed the song by singing it without authority upon a certain date, then I can understand that.

"But you give no information. You just say, you make a general allegation here that the defendants have infringed.

On July 12, 1961, the Court below entered its order "Order Granting Motion to Dismiss and Judgment of Dismissal."

This Order and Judgment of Dismissal, the basis of this appeal, sets forth ten separate grounds in support of the Court's decision. Affirmance of any one or more of these grounds will be dispositive of the appeal.

Perhaps the most clearly apparent ground for dismissal relied upon by the District Court and that upon which we base our holding is appellant's failure to comply with the order of April 18, 1961, limiting the subject matter to one motion picture and the persons associated with that picture.

The question before this Court is whether, based upon the foregoing facts taken from the record before us as designated by the parties hereto, the District Court, as a matter of law, abused his discretion in dismissing Amended Complaint II.

█ Both the state and federal courts have almost universally held or recognized that there is inherent power in the courts, in the interest of the orderly administration of justice, to dismiss for disobedience of court orders. Refior v. Lansing Drop Forge Co., 6th Cir., 124 F.2d 440, certiorari denied, 316 U.S. 671, 62 S.Ct. 1047, 86 L.Ed. 1746.

This is not a situation, however, where specific authorization is lacking. Rule 41(b), F.R.Civ.P., provides:

"For failure of the plaintiff * * to comply with * * * any order of court, a defendant may move for dismissal of an action or of any claim against him. * * * Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."

We acknowledge the long standing practice of dismissing without prejudice when dismissing a complaint prior to reaching the merits. Swan Land & Cattle Co. v. Frank, 1893, 148 U.S. 603, 13 S.Ct. 691, 37 L.Ed. 577. Also we are aware that dismissal of a party's cause of action is a severe and drastic measure.

█ In the instant case, however, there are numerous factors which, when

"Now, in order to decide the case from your pleadings I would have to look at every one of the items that the plaintiff claims to have a copyright on; and then I would have to look at every one of the items that you claim to infringe some part of the plaintiff's copyright, and determine whether or not there was infringement.

"You have got a whole year's work here, and I don't think that is according to the rule."

(Tr. pp. 3–6)

\* \* \* \* \*

"THE COURT: I don't think that the rule contemplates that a court has to wade through a pleading like this to ascertain what the rights of the parties are.

"The rule says you are to file a short, concise statement of the issues involved.

"Now you say that plaintiff has a copyright of a certain number of writings, songs and et cetera, and that they have without his consent, been used by the defendants. How have they been used?

"MR. ANDREWS: Your Honor, may I make one observation before we adjourn court?

"THE COURT: Yes.

"MR. ANDREWS: If you will give me the right to amend again—do you desire the plaintiff to set forth each particular copyright, instead of alleging the infringements of all of the copyrights?

"THE COURT: The last time you were here you said that you would bring an action which involved HIGH SOCIETY only, the picture HIGH SOCIETY only.

"MR. ANDREWS: Against the defendants of HIGH SOCIETY, which we have done.

"THE COURT: You mean to say that HIGH SOCIETY used every one of these copyrights that the plaintiff has?

"MR. ANDREWS: Yes, Your Honor, that is what he claims.

"THE COURT: In one picture?

"MR. ANDREWS: In a series of pictures from the same copyright, HIGH SOCIETY, this group of defendants."

(Tr. pp. 9–10)

considered together, justify as a matter of law, deviation from the general rule and further act in mitigation of the apparent harshness of the order.

The plaintiff here is not the victim of any error or inadvertence of his attorney. On the contrary, appellant chose to represent himself during the prior cases and during a substantial portion of this case.

Secondly, in view of the history of this litigation, the numerous amendments allowed, the opportunities given appellant to plead, and the exceedingly generous consideration and patience afforded by the District Court, it would be an understatement to say that appellant has not had his day in court. Olsen v. Muskegon Piston Ring Company, 6 Cir., 1941, 117 F.2d 163.

Also to be considered are the rights of the defendants. Certainly they have been prejudiced and put to considerable expense. It becomes the obligation of the Court to determine at what point plaintiff would be foreclosed from further harassing defendants with confused and confounding complaints. We do not attempt to identify the exact point in the proceedings below where the Court would have become justified as a matter of law, in exercising his discretion to dismiss. Such is not the question before us. Suffice it to say that the point had been reached.

Finally, there is not the slightest suggestion in the record that appellant's failure to amend in accordance with the order was the result of misunderstanding or inadvertence. It is clear, upon examination, that Amended Complaint II was the result of a conscious and deliberate decision not to abandon the form and content of the prior complaints.

We recognize, as did the District Court, that appellant conceivably had a cause of action. We also agree that the District Court, as well as the defendants, was entitled to have the claim or claims stated in a justiciable manner. Appellant chose not to meet the requirement which was not only reasonable but was absolutely essential to the eventual termination of the litigation.

The situation is not unlike Package Machinery Company v. Hayssen Manufacturing Company, 7 Cir., 1959, 266 F.2d 56, where it was stated, at page 57:

"We are convinced that plaintiff's unyielding determination not to define the trade secrets which it claimed were pirated by defendants was solidly arrayed against the almost inexhaustible patience of the district judge, who insisted that plaintiff comply with the court's orders. For a considerable period of time, plaintiff's determination prevailed. But, fortunately, the court overcame the inertia in the situation created by plaintiff; it was able to protect itself by invoking rule 41(b) which authorized it to enter the order of dismissal with prejudice, of which plaintiff now complains. We hold that this order was properly entered and it is hereby affirmed."

Reference is also made to Blake v. DeVilbiss Co., 6 Cir., 1941, 118 F.2d 346, and to Rossi v. McCloskey and Company, 1957, 149 F.Supp. 638.

In conclusion, we hold that the trial judge acted well within the scope of his discretionary powers granted under rule 41(b) and inherent in his office.

We do not deem it necessary to pass upon the sufficiency of the nine remaining grounds upon which the trial court relied in its judgment of dismissal.

Affirmed.