**Kurt VON POPPENHEIM, Appellant,**

v.

**PORTLAND BOXING & WRESTLING COMMISSION et al., Appellees.**

**No. 23846.**

United States Court of Appeals,
Ninth Circuit.

May 17, 1971.

Rehearing Denied Aug. 9, 1971.

Adelbert G. Clostermann (argued), Portland, Or., for appellant.

Emory Crofoot (argued), Deputy City Atty., Marion Rushing, City Atty., Portland, Or., John R. Gilbertson (argued), Miles Sweeney, of White, Sutherland & Gilbertson, Portland, Or., Richard Muller (argued), Portland, Or., for appellees.

Before HAMLEY and WRIGHT, Circuit Judges, and LINDBERG, District Judge.

LINDBERG, District Judge:

This appeal concerns that portion of Rule 41(b) of the Federal Rules of Civil Procedure that authorizes the court to dismiss a plaintiff's action with prejudice for his failure to comply with an order of the court. The appeal is properly before us pursuant to 28 U.S.C. § 1291.

Plaintiff Kurt von Poppenheim is a professional wrestler from Portland, Oregon. Defendants are the Portland Boxing & Wrestling Commission, the individual members of the Commission, the National Wrestling Alliance, Don Owen, Don Owen Sports, Inc., Mount Hood Radio & Television Broadcasting Corporation, and the National Wrestling Association of America. The Commission is a statutory body which has jurisdiction over all boxing and wrestling matches conducted within its territory. ORS 463.110, 463.120. One of its functions is the appointing of official wrestling matchmakers. ORS 463.140. Defendant Don Owen is the only wrestling matchmaker the Commission has appointed in the Portland area. Defendant National Wrestling Alliance is a national association of wrestling promoters; whereas the National Wrestling Association of America is primarily an association of wrestling commissioners. Defendant Mount Hood Broadcasting owns and operates a Portland television station which periodically has televised wrestling programs promoted by Don Owen.

In September of 1963 von Poppenheim applied to the Commission for a wrestling matchmaker's license in the Portland area. The Commission eventually denied the application on the stated basis that "the issuance of a second wrestling matchmaker's license at this time would not be in the best interest of wrestling in the Portland area."

Plaintiff promptly filed suit against the Commission in the Circuit Court of the State of Oregon, alleging that the Commission's action was arbitrary and capricious and accomplished an "unlawful monopoly in commercial licensed professional wrestling." He sought a mandatory injunction to compel the Commission to issue him a license. The Oregon Circuit Court dismissed plaintiff's action on the pleadings after considering an original and two amended complaints. On appeal, the Oregon Supreme Court affirmed the dismissal.[1] 241 Or. 603, 407 P.2d 853 (1965).

Two months later von Poppenheim initiated the present action in the Federal District Court for the District of Oregon. The thrust of his complaint was that the members of the Commission had some time in the past entered into a conspiracy and combination with the other defendants "to restrain trade and commerce among the several states in the business of professional wrestling" in violation of federal antitrust provisions. It also alleged that the state statutes creating and empowering the commission to appoint matchmakers were, for various reasons, unconstitutional. Plaintiff sought treble damages, a declaration that the state statutes were unconstitutional, an injunction preventing the enforcement of these statutes, and

---

1. The Oregon Supreme Court first held that at the time von Poppenheim had applied to be appointed a wrestling matchmaker the Commission only had the statutory power to appoint boxing matchmakers. It noted, however, that in the interim period between the time of von Poppenheim's application and the hearing of his case on appeal the Oregon legislature had given the Commission responsibility to appoint wrestling matchmakers. ORS 463.140 (1965). Construing plaintiff's application under the new law, the Oregon court held that the Commission's action was not arbitrary or capricious.

an injunction preventing defendants from "interfering in any way with plaintiff in his occupation of wrestling matchmaker and promoter in the Portland area."

Approximately fourteen months after the action was originally filed, the district judge to whom the case was assigned requested plaintiff to submit a detailed pretrial statement to the court in order to clarify the issues involved in the case. Nearly six months after the statement was due, but not forthcoming, defendants moved for a dismissal under Rule 41(b). The court did not grant the motion, but gave plaintiff further time to submit a satisfactory statement. Plaintiff eventually submitted several statements, but the district judge held that they failed to comply with the requirements of his order. He then granted the defendants' motion to dismiss with prejudice. This appeal followed.

Insofar as it is applicable to this case, Rule 41(b) provides:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. * * * Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision * * * operates as an adjudication upon the merits.

Because a dismissal under Rule 41(b) is such a harsh remedy, and because such dismissals are frequently occasioned by inattention of counsel rather than by plaintiff's own wrongdoing, courts are rightfully reluctant to employ 41(b) sanctions for failure to comply with an order of the court. Industrial Buildings Materials, Inc. v. Interchemi-

cal Corporation, 437 F.2d 1336 (9th Cir. 1970); Flaksa v. Little River Marine Construction Co., 389 F.2d 885 (5th Cir.), cert. denied, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968); Syracuse Broadcasting Corp. v. Newhouse, 271 F. 2d 910 (2d Cir. 1959). It is equally clear, however, that aggravated circumstances may make dismissal under 41(b) appropriate. Agnew v. Moody, 330 F.2d 868 (9th Cir.), cert. denied, 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70 (1964); O'Brien v. Sinatra, 315 F.2d 637 (9th Cir. 1963). In those cases the district judge will be reversed only if he has abused his discretion in dismissing the action. Industrial Building Materials, Inc. v. Interchemical Corp., *supra*; Blake v. De Vilviss, 118 F.2d 346 (6th Cir. 1941); see Link v. Wabash Railroad Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); Russell v. Cunningham, 233 F.2d 806 (9th Cir. 1956).

In the present action, the crux of the problem in the district court was plaintiff's continuing failure to advise defendants sufficiently of the basis of his claim or the facts upon which he was relying to enable them to prepare an appropriate defense. Plaintiff's complaint was prolix, confused and obscure. More important from the defendants' point of view, however, was plaintiff's subsequent inability or unwillingness to narrow the legal issues or set out with any degree of particularity the facts upon which he based the broad and conclusory statements of his complaint.[2] Defendants deposed and served interrogatories on plaintiff on several occasions. Plaintiffs responses to the critical portions of these discovery efforts were consistently unresponsive. They failed to narrow the scope of inquiry or form a satisfactory base from which defend-

---

2. The Federal Rules of Civil Procedure do not require a claimant's complaint to set out in detail the facts upon which he bases his claim. All that is required is a short and plain statement of the claim that will give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78

S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Concomitantly, however, it is expected that the Rules' liberal discovery provisions will afford the defendant the opportunity to investigate more precisely the nature and basis of the plaintiff's claim and to define more narrowly the disputed facts and issues. Conley v. Gibson, *supra*.

ants could proceed in the preparation of their defense.[3]

On April 24, 1967, approximately fourteen months after the action had been filed, plaintiff's counsel advised the district judge that plaintiff's preparation could be "wrapped up for the Court" within thirty to sixty days. The district judge then requested plaintiff to file a pretrial statement with the court within sixty days.

> I want a statement of what the conspiracy or conspiracies consist, with specificity, I should add.

> Secondly, the names of the witnesses who will give you information concerning the existence of a conspiracy.

> And, thirdly, the testimony you believe these witnesses will give.

> With reference to point number one, I think you should set out the parties to the conspiracy and the role which each of those parties played.

He also urged plaintiff's counsel to associate with someone who was more experienced with federal litigation, and in particular with antitrust litigation.

When plaintiff failed to prepare a pretrial statement within the sixty days, opposing counsel contacted plaintiff's attorney, reminded him of his duty to file a statement, and urged him to do so promptly. Plaintiff still did not prepare a statement; instead plaintiff's counsel prepared a letter containing information that vaguely followed the contours of the statement requested by the court and sent it to defendant's attorneys. No other efforts to comply with the court order were taken.

Six months passed. During this period defendants' counsel informally contacted plaintiff's attorney and expressed dissatisfaction with the quality of the information contained in the July letter. In December, 1967, defendants finally filed motions to have plaintiff's action dismissed for failure to comply with the court's order. When the motions were jointly argued on January 2, 1968, the district judge indicated that the July letter did not constitute compliance with the court's order because the information contained therein was conclusory, incomplete and otherwise obscure. He did not rule on the motion to dismiss,

---

3. The following excerpt from plaintiff's "Answers to Interrogatories" filed October 25, 1966 is illustrative:

> 18. With reference to Paragraph XXV, starting on Line 1, Page 8, of your Complaint, in what way, if any, are these interrogating defendants connected with the making, licensing or distributing of motion pictures of wrestling exhibitions?
> A. I am unable to presently answer this question.
> 19. What are the arrangements, if any, between the defendant, Mt. Hood Radio and Television Broadcasting Corporation and these interrogating defendants?
> A. I am not fully informed at the present time.
> * * * * *
> 28. Did these interrogating defendants or any of them individually ever at any time enter into a contract with defendant Don Owen or anyone else setting up a monopoly of professional wrestling by promoter-matchmaker Don Owen within the jurisdiction of the defendant Commission?

> A. Activities suggest some arrangement.
> * * * * *
> 33. Who, among these interrogating defendants, were the parties to the alleged conspiracy?
> A. All.
> 34. On what date was the agreement of the conspiracy reached?
> A. Various dates.
> 35. State the names and addresses of all persons present at the time the agreement of conspiracy was entered into.
> A. Presently unable to answer.
> 36. Was the agreement of conspiracy a written document or was it an oral agreement?
> A. In part.
> 37. If said agreement of conspiracy was a written document and you will do so without a motion to produce, attach a copy of said document to your answers to these interrogatories.
> A. Presently unable to answer.
> 38. If the conspiracy agreement was oral, state the contents of said agreement in detail.
> A. Presently unable to answer.

however, because of the possibility that plaintiff had been under the misimpression that the information contained in the letter was sufficient. The judge allowed plaintiff a period of several more weeks in which to file a statement containing the information originally requested. He made it clear, however, that he expected the statement to be "as full and as specific as possible" and that if the statement was inadequate he would "have no alternative but to dismiss the case."

On February 1, 1968, a statement was filed. In several respects this statement was more expansive than the July letter, but it too failed to set forth with specificity the requested information. Rather than dismiss the case, the district judge granted plaintiff a further extension of a month within which to submit a presentable document. He again urged plaintiff's counsel to associate with an experienced antitrust attorney.

Plaintiff's attorney again failed to heed the district judge's advice to associate with experienced counsel. Instead, he prepared and presented to the court and counsel for the defendant on March 11, 1968, a new document entitled "Plaintiff's Memorandum and Supplemental Statement." This memorandum was largely a narrative summary made up from documents which plaintiff relied upon to prove his case. The documents themselves were attached to the statement in the form of exhibits. After they were given sufficient time to examine the supplementary statement, defendants renewed their motions to dismiss under Rule 41(b) and argued the matter before the Court on March 25, 1968. Their main objection was that plaintiff's statements still lacked the specificity required by the Court and necessary to enable them to prepare an intelligent defense. The district judge took the motions under submission, reviewed the entire case, and entered an order granting defendants' motions to dismiss.

This appeal raises two issues: (1) whether the letter and statements, taken singularly or together, did in fact constitute compliance with the court's order; (2) whether, notwithstanding noncompliance, the district judge abused his discretion in dismissing the action with prejudice.

The district judge held that the documents did not comply with his order. Although this determination is reviewable, it is entitled to considerable weight. Industrial Building Materials, Inc. v. Interchemical Corp., *supra*. The district judge is in the best position to understand the full content of his order, to assess the efforts to accomplish compliance, and to appreciate the extent that the information actually supplied was helpful in accomplishing the purpose of the order. Industrial Building Materials, Inc. v. Interchemical Corp., *supra*. We have reviewed the documents that plaintiff submitted in response to the court's order, and we cannot say that the district judge's determination was erroneous. Plaintiff never did set out a full list of the names of the witnesses he relied upon to establish the conspiracy. He did mention that he intended to rely upon the "testimony and writings" of several of the defendants and their close business associates, but he also indicated his reliance upon "former wrestlers and some others," all of whom remained unidentified. He also failed to set out the nature or substance of the testimony he expected to elicit from any of his witnesses, and his description of the role played by each of the defendants, insofar as their actions were supposed to be illegal, remained imprecise and undetailed. Absent the quality and kind of information requested by the court, the documents were completely inadequate.

Given the inadequacy and untimeliness of plaintiff's statements, however, the issue still remains of whether the dismissal with prejudice was an abuse of the district judge's discretion. See, e. g., Industrial Building Materials, Inc. v. Interchemical Corp., *supra*; cf. Sykes v. United States, 290 F.2d 555 (9th Cir. 1961). In the analysis of this issue the

opinion of the district judge dismissing plaintiff's action is an appropriate beginning point.

Kurt von Poppenheim (plaintiff) filed an action charging, in vague and general terms, that defendants had conspired to deny him a license to promote wrestling matches in Portland, Oregon, in violation of federal antitrust laws.

I denied defendants' motions to dismiss in order to give plaintiff the opportunity to obtain the information he needed to establish his case. I granted plaintiff extensions of time to submit interrogatories. After several months, I told plaintiff that I could not allow an antitrust case to continue when it was based solely on suspicion. Finally, I directed him to set forth, with specificity, the acts which he claimed formed the basis of the conspiracy. I also directed him to list the witnesses who would testify at the trial, and to state generally what he expected them to say. I gave him sixty days to do this.

Plaintiff has failed to comply with this order and defendants have moved to dismiss the action under Rule 41(b) Federal Rules of Civil Procedure. On numerous occasions extending over a period of more than 12 months, I urged plaintiff's counsel to comply with my order and to associate with him counsel possessing expertise in the antitrust field. The case has been pending for two and a half years, and I issued my order directing plaintiff to specify the basis for his action one and a half years ago. So far he has failed to comply with this order.

Despite the narrowness of defendants' motions, I have examined the entire record, consisting of three volumes of interrogatories, briefs, depositions, and transcripts to determine whether the plaintiff has any claim against any or all of the defendants. I have examined the authorities upon which plaintiff relies, as well as the case from the Supreme Court of Oregon in which plaintiff sued defendant Commission. I have also made an independent examination of the law.

\* \* \* \* \* \*

Plaintiff apparently believes that the defendants are acting in concert to keep him from staging wrestling exhibitions in Portland, but surmise and suspicion are not substitutes for evidence.

\* \* \* \* \* \*

I believe that before the City of Portland's Boxing and Wrestling Commission or the other defendants should be put to the expense of defending an antitrust action, they are entitled to know the contentions they will have to meet. I am reluctant to dismiss an action without a hearing. I never do it where the complaint states a claim defectively; I will do it only where it affirmatively appears that the plaintiff is unable to make out a claim. I am convinced that here plaintiff cannot make out a claim upon which relief can be granted and that additional time will not solve the problem.

The defendants' motions to dismiss under Rule 41(b) Fed.R.Civ.P. are granted.[4]

▆ Although we are aware of the serious consequences of the district court's dismissal, we are satisfied after

4. On this appeal plaintiff has obliquely suggested that the district judge's dismissal was in the nature of a summary judgment or dismissal for having failed to state a claim rather than for having failed to comply with the court's order. If such were the case, of course, our standards of review would be quite different. Compare *DeWitt v. Pail*, 366 F.2d 682 (9th Cir. 1966) and Hughes Blades v. Diamond

Tool Associates, 300 F.2d 853 (9th Cir. 1962) with O'Brien v. Sinatra, *supra*. (We would also note in this connection that no motion to dismiss or for summary judgment was before the court.) We have thoroughly examined the entire record in this case to test the merits of plaintiff's suggestion. We are satisfied after this examination that the moving cause of the dismissal was plaintiff's failure to submit

reviewing the entire record that the action of the district judge was within the limits of his discretion. Almost two years after this action had been filed, and almost one year after plaintiff had originally estimated that his discovery was nearly complete, plaintiff had still failed to apprise the defendants of the contentions they were to meet. In these circumstances plaintiff's failure to provide the requested information did not merely make normal progress more difficult. The status of the pleadings and of discovery were such that noncompliance prevented any further progress at all. It is not clear whether plaintiff's failure to make this basic information available was a result of a "conscious and deliberate decision," O'Brien v. Sinatra, 315 F. 2d 637 (9th Cir. 1963), or merely a result of gross inadvertence or inexperience. That issue is not determinative. Plaintiff's failure to comply with the order demonstrated either an obstinate determination not to provide the requested information or, if inexperience was the problem, an impervious unwillingness to follow the advice of the court to associate experienced antitrust counsel. In either case, plaintiff's failure to take reasonable steps to provide the basic information frustrated all hope of molding his case into a justiciable posture.

None of the actions taken by the district judge accomplished compliance. The original order was clear and unambiguous. The information sought was not complex; much of it in fact consisted of listing plaintiff's witnesses and detailing the content of their anticipated testimony. When plaintiff neither timely nor adequately complied with the court's order, the district judge granted him several extensions in time to comply. The total time permitted for compliance was eleven months. During this period the court repeatedly urged plaintiff's counsel to find expert help. He also advised counsel that noncompliance would result in dismissal with prejudice. After eleven months compliance simply was not forthcoming.

In Industrial Building Materials, Inc. v. Interchemical Corporation, 437 F.2d 1336, this Court recently reaffirmed the position that the sanctions of Rule 41(b) to enforce a court order should only be invoked in extreme circumstances. That decision stressed that less drastic alternatives should first be considered before dismissing an action under Rule 41(b). Notably, under the circumstances of that case, we specifically suggested the possibilities of arranging for substitute counsel or of continuing the proceedings in order to allow plaintiff to come into compliance with a pretrial order. In the present case it is clear that the district judge exhausted both of these alternatives.

There are of course a wide variety of other sanctions short of dismissal that are available.[5] The district judge,

an adequate statement to the court and that the dismissal was in fact based upon Rule 41(b).

The district judge was obviously aware of the legal hurdles plaintiff faced in this litigation and of the general quality of proof he relied upon to establish his case. This information, however, was ancillary; it was one of many factors the court took into consideration before determining that dismissal with prejudice was appropriate. A dismissal under Rule 41(b) is not grounded on the sufficiency or insufficiency of the merits of a case. However, it is patent that the harshness of a dismissal with prejudice is directly proportionate to the likelihood that plaintiff would prevail if permitted to go forward

to trial. Since harshness is a key consideration in the district judge's exercise of discretion, it is appropriate that he consider the strength of a plaintiff's case if such information is available to him before determining whether dismissal with prejudice is appropriate. In the instant case such information was before the district judge.

5. See generally, Annotation: Dismissal of Action for Failure or Refusal of Plaintiff to Obey Court Order, 4 A.L.R.2d 348; Waterman, An. Appellate Judge's Approach when Reviewing District Court Sanctions Imposed for the Purpose of Insuring Compliance with Pretrial Orders. 29 F.R.D. 420 (1961) 3 Moore's Federal Practice Para. 16.19 (2d Ed.).

however, need not exhaust them all before finally dismissing a case. The exercise of his discretion to dismiss requires only that possible and meaningful alternatives be reasonably explored, bearing in mind the drastic foreclosure of rights that dismissal effects. Here the district judge made such reasonable opportunities and alternatives available to plaintiff that the dismissal was not an abuse of his discretion. Somewhere along the line, the rights of the defendants to be free from costly and harassing litigation must be considered. So too must the time and energies of our courts and the rights of would-be litigants awaiting their turns to have other matters resolved. The exact point on that line is incapable of exact definition, but we are satisfied that the present case went beyond it.

The judgment of the district court is affirmed.