Robert L. WARDEN, Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.

No. 78 C 3871.

United States District Court,
N. D. Illinois, E. D.

Nov. 19, 1981.

Lance Haddix, Chicago, Ill., for plaintiff.

Vincent M. Garvey, Andrew M. Wolfe, U. S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Robert L. Warden ("Warden") has sued the Federal Bureau of Investigation ("FBI") and the Central Intelligence Agency ("CIA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.*, to obtain vast congeries of documents. When this lawsuit began in 1978, Warden's Complaint sought 25 separate categories of documents in defendants' possession. Each category but one called for all the information possessed by one of the agencies as to a notable person or persons.[1] Count XXV asked for all FBI's files as to its counterintelligence program ("Cointelpro").

Defendants have moved to dismiss the Complaint based upon Warden's failure to prosecute this action and for ignoring the

orders of this Court. For the reasons stated in this memorandum opinion and order, their motion is granted.

When this action was first reassigned to this Court's calendar in mid-1980 it had lain dormant for some time while defendants were reviewing their records to determine which were and which were not exempt from FOIA disclosure. Little other than Warden's non-response to defendants' motion for partial dismissal transpired until January 30, 1981, when negotiations between the parties looking toward some simplification of the issues produced an agreed-upon pretrial order entered by the Court.

By the terms of that order Warden confirmed his abandonment of, and this Court therefore dismissed, various of his claims. Warden also narrowed the scope of others. Then the order—agreed to by Warden, it should be remembered—established different procedures to deal with the surviving claims against the two agencies:

(1) As to the remaining CIA claims the government retained its motion for partial dismissal, then pending for nearly four months—since October 3, 1980. Warden was granted leave to file a written opposition to that pending motion one week hence, by February 6. This Court thus contemplated disposing of that important motion—which claimed a major jurisdictional defect in Warden's case—in short order. Nonetheless Warden has neither filed his written opposition, as contemplated by the January 30 order, nor offered any explanation for that delinquency to this date—nine months after his memorandum was due.

(2) Surviving FBI claims were to receive a somewhat more complicated treatment under the January 30 order. FBI has objected on various statutory grounds to the disclosure of many of the documents Warden requests. To expedite resolution of those questions the parties agreed to a sampling procedure under which (a) by February 13 FBI would as-

---

1. For example Count I comprised FBI's files on Hubert Humphrey. Count II dealt with FBI's files on Charlie Chaplin.

semble all of the documents as to which exemption was claimed, (b) Warden or his designee would draw a number between 1 and 25 and (c) the document corresponding to that number, and every twenty-fifth document thereafter, would make up the sample group. By February 20 Warden and FBI were to submit a joint index identifying the selected documents. By April 20 FBI was to submit its justifications for claimed exemption of the selected documents from FOIA's mandatory disclosure requirements. *See* 5 U.S.C. § 552(a)(4)(B). All those steps were taken exactly as prescribed in the January 30 order.[2] But the next step—Warden's only meaningful obligation—never took place. By May 13 Warden was to submit to this Court his objections, if any, to the FBI's proffered justifications. Again this Court anticipated deciding the disputed legal issues on the parties' opposing submissions. And again an extended time period has elapsed—in this instance six months—with neither filing nor explanation.

Thus both CIA's and FBI's work in this litigation has been met only with indifference on Warden's side. They differ only in the time span of Warden's delinquency. Moreover, counsel wrote Warden's counsel reminding him of his delinquencies and asking for voluntary dismissal of all but Count XXV. Silence ensued.

Indeed this is not the first time that Warden has responded to defendants' efforts with inaction. Defendants' October 3, 1980 motion to dismiss charged that they had already searched for and duplicated a large portion of Warden's requests, but that Warden had refused to reimburse the agencies for such costs as required under FOIA and its regulations. As a legal matter, defendants argued that Warden had "curtailed the administrative process and pre-cluded the subject matter jurisdiction of this court." But defendants' basic factual contention was that Warden was no longer interested enough in the requested documents to pay for them even when defendants did not contest his right to them under FOIA.

Defendants filed their motion October 3, 1980 and, as is customary, a briefing schedule was set. Warden's responsive brief was due by October 21. In the interim defendants filed all the necessary papers, memos and affidavits pursuant to the briefing schedule. But Warden failed to file anything or even ask for an enlargement of time. Thus the January 30, 1981 order, which gave Warden until February 6 to respond to CIA's recast motion for partial dismissal on the same grounds as its October 3 motion, was really a "second chance" for Warden. As already indicated, Warden ignored that second chance just as he had ignored the first.[3]

Defendants' characterization of Warden's behavior at page 6 of their August 20, 1981 supporting memorandum is all too accurate:

> The plaintiff has been granted numerous opportunities either to litigate his claims or to voluntarily dismiss them, but has declined to do either. Instead, he sat idly by while the defendants have served upon him paper after paper in a vain effort to bring this litigation to a conclusion.

It is especially unfortunate that such nonfeasance takes place in litigation involving FOIA. Plaintiffs under FOIA are, as a practical matter, in a different position vis-a-vis the case than plaintiffs in (say) ordinary commercial litigation. If commercial plaintiffs put their defendants to time and trouble in responding to plaintiffs' claims, that imposition on the defendant also normally generates cost burdens that plaintiffs

---

2. It should be observed that every significant step was FBI's not Warden's. All Warden had to do was to draw the number used to choose the selected documents and join in FBI's identifying index.

3. In the more than nine months since the January 30 order, Warden *has* made one filing: On August 31 last he filed a "Motion for Continuance or, in the Alternative for 'Vaughan [sic] v. Rosen' Relief" and a supporting two-page "Memorandum and Affidavit in Response to Defendants' Motion to Dismiss." Neither the motion nor the memorandum/affidavit treated with issues then before the Court.

must bear.[4] And if such a plaintiff's claim is truly groundless, defendant may have a motion to dismiss in his arsenal, with success sparing him the often large costs of going through discovery.

FOIA plaintiffs are in a very different posture. As defendants point out, FOIA gives plaintiffs the power to compel the government to search for designated categories of documents and to disclose so much of them as are not exempted under the Act. Most of the resulting expenses are borne by the public. This is a balance—or rather a beneficial imbalance—that Congress has struck. This Court cannot and would not disturb the congressional policy decision.

■ But the Court is keenly aware that in this particular action the government has fulfilled all its responsibilities in trying to bring the controversy to some resolution. Warden and his counsel have not. Given a plaintiff's power to impose disproportionately large expenses on the government in an FOIA action, he has a correlative duty of the conscientious pursuit of good faith claims. Warden has broadly exercised the *power* of FOIA plaintiffs, but the exercise of *his duty* has been wholly absent.

■ What then is to be done with this litigation? Ample authority confirms the Court's power to find a want of prosecution in these circumstances and to dismiss the action with prejudice under Fed.R.Civ.P. 41(b). See such cases as *Asociacion de Empleados v. Rodriguez Morales*, 538 F.2d 915 (1st Cir. 1976); *Stanley v. Continental Oil Co.*, 536 F.2d 914, 916–17 (10th Cir. 1976); *Von Poppenheim v. Portland Boxing & Wrestling Comm'n*, 442 F.2d 1047, 1051–53 (9th Cir. 1971); *Hyler v. Reynolds*, 434 F.2d 1064 (5th Cir. 1970). In each of those cases the plaintiff failed to abide by court orders—or did so belatedly or inadequately— and dismissal ensued.

This Court is well aware that dismissal is the most severe sanction available to combat failure to prosecute an action. It is equally aware of the strong public interest component typically present in FOIA actions. Only FOIA can serve the public's right and need to know in a great many instances.

But the Court has considered other sanctions short of the ultimate one of dismissal and found them wanting. In the most meaningful sense it has been *Warden's* choice to treat his lawsuit like a foundling left on someone else's doorstep.

This case involves the kind of abuse that can put FOIA actions in bad odor and thus imperil the legitimate invocation of that Act. Warden cannot in good conscience be allowed to force continued expenses upon the government (and to a lesser extent impose burdens on this Court) solely because three years ago he filed his Complaint seeking information in which he has evidently long since lost interest.[5] Since he launched his missile in the form of that Complaint, this case has pretty much run on its own steam—or more accurately the taxpayers' steam—while Warden has not even gone through the motions of active prosecution. This situation now being evident, it has ceased to be tolerable.

### Conclusion

Defendants' motion is granted. This action is dismissed.[6]

---

4. This is not of course to suggest a perfect match. One of the problems with the mounting costs of litigation today is the tendency to favor the deep-pocket litigant in the war of attrition.

5. It may well be that Warden, a well-known journalist, began his wide-ranging search in contemplation of a journalistic project or series of projects. Whatever the initial impetus, his total inattention over an extended time period makes it appear that greener fields have beckoned. In any case the Court can only deal with this as it would any other litigation by impos-

ing normal and reasonable standards of diligence on the litigants.

6. Warden is arguably not yet in default as to any specific obligations regarding Count XXV's Cointelpro claim, as to which the government again did *its* job by reporting to the Court on such documents. It might nonetheless be observed that Warden has done nothing since then to activate that claim. More importantly, however, this is a single action involving Warden's total activity (or lack of it) against defendants. Because the abuses as to all the other claims have been so egregious and Warden is

in substantial default *in this action as such*, the Court will not separate out one count for survivorship. *See O'Brien v. Sinatra*, 315 F.2d 637 (9th Cir. 1963).