667 P.2d 1312

**Albert CARMAN and Edith Carman, husband and wife, Plaintiffs-Appellants,**

v.

**Harry HEFTER, Defendant-Appellee.**

**No. 16655–PR.**

Supreme Court of Arizona,
En Banc.

July 21, 1983.

Wycoff & Charles by Joseph W. Charles, Glendale, for plaintiffs-appellants.

Hofmann, Salcito & Stevens, P.A. by Leroy W. Hofmann, Phoenix, for defendant-appellee.

HAYS, Justice.

The court having heretofore granted a Petition for Review, the following Memorandum Decision of the Court of Appeals (1 CA–CIV 5832/1 CA–CIV 5879—consolidated, filed March 3, 1983), on which we granted review, is adopted in its entirety, for publication, as follows:

GRANT, Judge.

In this appeal we are called upon to determine whether the trial court abused its discretion in dismissing the plaintiff/appellant's personal injury complaint with prejudice.

Edith Carman was injured when the car she was driving was involved in a collision with a car driven by the appellee/defendant Harry Hefter. Edith Carman and her husband, Albert Carman, filed a lawsuit against Harry Hefter.

The case was originally set for trial on March 10, 1980. However, on that date Carman presented a motion to amend the complaint to raise a loss of consortium claim. Judge *pro tempore* Joseph Howe,[1] over defendant's objection, granted the motion to amend, postponed the trial for one week and ordered jury fees assessed against the Carmans. The case came on again for trial on March 17, 1980, before a jury, with Judge *pro tempore* Joseph Howe again presiding. During the direct examination of Edith Carman she mentioned insurance in the following manner:

Q. Okay. And was there any damages done to your car at that time?

A. Yes, sir.

Q. And tell us what the damages were to your car.

A. Well, there were damages to the bumper, and the insurance estimate of those damages was in the nature of $300.

Defense counsel immediately moved for a mistrial. In granting the motion for mistrial the court said:

I think I'm going to have to grant it. She's just overreaching, and it was nonresponsive. It wasn't your fault, she just decided she was going to take it in her own hands. I'm sorry. The motion will be granted, and I'll instruct the jury.

Later in chambers defense counsel asked that the defendant's costs incurred as a result of the mistrial be paid in advance. He stated that he was apprehensive that unless the judge did so the case was going to go on like this over and over again. The court in considering the request said:

Well, I agree with you, and part of my reason for granting the mistrial, I think that the plaintiff herself either consciously or subconsciously was trying to get a foot in the door. I think it was overreaching on her part, and that's why I granted the mistrial, even though she may not have been thinking about that

1. Judge Howe is now a duly appointed judge of the Maricopa County Superior Court.

kind of thing at all. But I think she really felt that it might help her case. She's, of course, been doing a lot of nodding, shaking, expressing herself in court in a way which is designed to influence a jury without showing on the record. That's ultimately why I granted the mistrial.

On April 3, 1980, Judge Howe assessed jury fees in the sum of $108.00 incident to the mistrial against the plaintiffs.

Thereafter, the case came on for trial again on October 17, 1980, again before a jury, Judge Thomas Kleinschmidt presiding. Because of the apprehension previously mentioned by defendant's counsel, and at defendant's request, Judge Kleinschmidt called the parties into chambers and specifically and expressly ordered them not to mention insurance nor their relative wealth or property. Judge Kleinschmidt said:

I know there was a mistrial once, over the issue of insurance. So everybody, both sides have to know that you can't mention insurance period. Similarly, no one, without further direct permission from me, should say anything in the presence of the jury about how much money they have or don't have, or that they did something or failed to do something for lack of money. Do you have any questions about that?

The trial then proceeded. The defendant Hefter was allowed to call out of order a psychiatrist, Dr. Howard Gray. Dr. Gray was the first witness in this second trial. Dr. Gray was examined by counsel for Hefter and stated that, as a result of his independent medical examination of Edith Carman, he found that she had pre-existing personality characteristics or traits that we all have as part of being human and that these traits included a tendency toward drug dependency and abuse, manipulation, a tendency to deny problems, a tendency to intellectualize about problems, repression, to feel angry and rejected. Dr. Gray stated that these personality traits were not caused by the automobile accident Mrs. Carman was involved in. Dr. Gray did state that he believed she was consciously and deliberately magnifying her complaints. Dr. Gray's testimony was not particularly favorable to Edith Carman's case.

Following Dr. Gray's testimony Edith Carman was called as the first witness in her case. Her counsel first began with questions dealing with the testimony of Dr. Gray who had just left the witness stand. He then proceeded to review with her her immediate medical problems as she understood them to then exist. Carman testified to her physical symptoms in addition to her past medical problems. Counsel then proceeded to ask Carman how the accident occurred. It was during this part of her testimony that the following testimony took place:

Q. And what did you do after the accident, did you talk to Mr. Hefter?

A. Well, the first thing I did, I immediately turned around to see what had happened, and I saw this car behind me. And I immediately—it was a terrific jolt from the impact, and my neck hurt and I immediately got a headache. I don't know whether I was really thinking too straight or not, it was a terrific headache, very sharp. But all I could think of was that I was blocking this driveway, so as soon as I could I pulled across the street, directly across Bethany Home Road, where you could park where you could stop and be out of the line of traffic and you would not be holding up anybody. And Mr. Hefter followed me and we both stopped.

Q. Okay. Did you talk to him, or did he talk to you?

A. I got out and went to the rear of my car, looked at the damage and asked him for his name and address. And he was very casual about it. He didn't— he definitely didn't offer to pay for any damages, and when I asked for his name and address, and his insurance company he pointed to the damage in the rear of my car and said—

At that point defense counsel moved for a mistrial. In chambers, the court said:

I have reviewed the file in this case, and I see that this has happened previously.

The record is clear as to what has happened .... It's clear Judge Howe felt the plaintiff had specifically mentioned insurance before, and while in this mention there is no clear cut indication to the jury that the plaintiff or that the defendant has insurance, the plaintiff was clearly and explicitly warned not to mention insurance, and she has done so, and I find that she has done so on purpose.

Now, what is the appropriate penalty? Is a mere mistrial sufficient, or should there be a dismissal with prejudice? That's the question.

I believe the plaintiffs are abusing the courts.

When plaintiff's counsel protested this last statement of the court, the court repeated:

I think the plaintiffs are abusing the court.

Later the court went on to say:

The expenses are too minimal for what she had done in this case. It's a real abuse of the entire system of justice.

I will take the motion to—there will either be a mistrial or a dismissal with prejudice. I will take it under advisement and let Mr. Frederick cite cases, if possible on it.

If you can find any. It is just inexcusable. It is just unfair and unjust and unexcusable. I'll seriously consider a motion to dismiss it with prejudice.

Whereupon the judge dismissed the jury.

Judge Kleinschmidt later granted the defendant's motion to dismiss and made these findings:

The Court has observed the Plaintiff, Edith Carman, with care and believes that she is an intelligent and alert person. The Court further finds that the Plaintiff has twice deliberately, knowingly, and with calculation injected matters into the trial which she knew were improper. This was done, on the second occasion, over a direct order of the Court issued on the very morning of the incident in question.

The Court has considered all other less severe alternatives. The Plaintiff is financially unable to recompense the considerable expense she has caused the Defendant by her deliberate misconduct. The effect of the delay this has caused is difficult to assess.

The Court concludes that the Plaintiff has had every opportunity to fairly present her case and has abused her right to such a degree as to require dismissal with prejudice.

Rule 41(b), Rules of Civil Procedure provides:

Involuntary dismissal: effect thereof.

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him.

Under rule 41(b), a number of cases have held that dismissal with prejudice is the appropriate remedy for the plaintiff's intentional or willful non-compliance with a court order. Annot. 15 A.L.R. Fed. 407 (1973) (Rule 41(b)—Dismissal with Prejudice, § 1[a]).

■ Rule 411, Arizona Rules of Evidence, provides:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

We note that the mere mention of insurance before a jury does not require a mistrial unless prejudice is shown. *Michael v. Cole,* 122 Ariz. 450, 595 P.2d 995 (1979). We question whether this rule is not rather archaic in this day and age when most jurors are sophisticated enough to presume that the defending party has insurance or the case would not be in court. This is even more true now that Arizona has a mandatory insurance law,[2] although that law was

**2.** Laws 1982, Ch. 298 (*effective Dec. 31, 1982*)

not in effect at the time of this case. However, it is for the supreme court to consider whether this rule ought to be modified or eliminated.

The issue here is not so much the fact that Carman mentioned insurance but that she mentioned it in direct violation of a court order that she not do so. She violated such a court order twice and the findings are that she did so willfully both times, thus causing two mistrials and the resultant expenses to the defendant and the burden on the judicial system. The only issue before us is whether the trial judge abused his discretion in dismissing the complaint with prejudice. We do not agree with appellant that the dismissal was too severe a punishment for the offense. An examination of the record reveals that the trial judge carefully considered alternative remedies and rejected each one in turn. Even though this is the type of situation that sorely tries the patience of a trial judge, it is clear that this particular judge did not react hastily or in anger. See *Package Machinery Co. v. Hayssen Mfg. Co.,* 266 F.2d 56 (7th Cir. 1959); *O'Brien v. Sinatra,* 315 F.2d 637 (9th Cir. 1963). He reflected upon alternative methods of dealing with Carman but found that none was satisfactory under the circumstances of this case. *See Von Poppenheim v. Portland Boxing and Wrestling Comm'n,* 442 F.2d 1047 (9th Cir. 1971), *cert. den.* 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed. 2d 731, 1972. Because we find no abuse of discretion on the part of the trial judge, we affirm the judgment dismissing the case with prejudice.

s/ Sarah D. Grant
SARAH D. GRANT, JUDGE

CONCURRING:

s/ Donald F. Froeb
DONALD F. FROEB, PRESIDING JUDGE
DEPARTMENT B

s/ D.L. Greer
D.L. GREER, JUDGE

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.