**U. S. N. CO., Inc.**

v.

**AMERICAN EXPRESS COMPANY.**

**Civ. A. No. 68–563.**

United States District Court,
E. D. Pennsylvania.

April 10, 1972.

---

Michael Quinlan, Austin Hogan, Krusen, Evans & Byrne, Philadelphia, Pa., Robert Sparago, House Counsel for U.S. N., New York City, for plaintiff.

Jerome Shestack, Arthur Kahn, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

EDWARD R. BECKER, District Judge.

### I.

We have before us defendant's motion to dismiss this antitrust action, pursuant to Fed.R.Civ.P. 41(b) for failure to prosecute or comply with orders of court. While we firmly believe that such motions should be granted most sparingly, and in fact, only in extreme circumstances, we feel that this case is appropriate for dismissal.

The complaint charges the defendant with continuing violations of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2; Section 7 of the Clayton Act, 15 U.S.C. § 18; Section 1 of the Robinson-Patman Act, 15 U.S.C. § 13 (d)(e); and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 41 et seq.[1] The factual allegations upon which these claims are based are essentially as follows. Plaintiff alleges that, commencing in 1963 and 1964, the defendant sharply reduced the "float" in its money order business (the period between the sale of a money order by American Express' local agent and the time he is required to account for its sale by payment to American Express). In addition, it is alleged that defendant steadily increased the commissions paid to its agents who sell the money orders to the point where the plaintiff was unable to compete effectively. The plaintiff claims that such practices can be sustained by the defendant because it, unlike the plaintiff, can pay for such services from the profits derived from another division of its multi-faceted business enterprise. The plaintiff also complains that such activities have induced many of the agents to break their contracts with the plaintiff and become the selling agents of the defendant. Finally, the plaintiff alleges that such predatory conduct is an attempt to drive it out of business and to monopolize the money order business in violation of the antitrust laws.

It is well known that monopolization cases are among the most complex and difficult and protracted in the antitrust field. Yet, for the four years that this case has been pending, the only discovery undertaken by the plaintiff has been one set of interrogatories composed of three requests. This fact is symptomatic of the approach taken by the plaintiff which is more fully demonstrated by the following procedural history.

### II.

The complaint was filed on February 29, 1968. The defendant noticed the taking of depositions on March 19, 1968 and the answer was filed and the case listed for trial on April 30, 1968. Through the remainder of 1968 and all of 1969, the only docket entry is the withdrawal of appearance by plaintiff's original local counsel and the entry of appearance of its present local counsel. On February 27, 1970, the defendant noticed the taking of additional depositions. At that time, the matter was assigned to the docket of Judge A. Leon Higginbotham, Jr. of this Court. Judge Higginbotham had set the case for trial for February 26, 1970.

About two weeks in advance of the trial date, plaintiff's local counsel, the law firm of Krusen, Evans and Byrne, advised Judge Higginbotham that they wished to withdraw from the case. On February 18, that firm informed Judge Higginbotham that trial counsel, Robert Sparago of New York City, wished a

---

[1]. The Robinson-Patman, FTC and Clayton Act claims were dismissed by the Court's Pretrial Order dated September 27, 1971.

conference.[2] Mr. Sparago is house counsel for U.S.N. and is also a U.S.N. director. Judge Higginbotham thereupon held a conference in his chambers on February 26, the transcript of which was filed. The conference was attended by Mr. Sparago, Michael E. Quinlan and Austin Hogan of the firm of Krusen, Evans and Byrne, and Jerome J. Shestac and Arthur H. Kahn of the law firm of Schnader, Harrison, Segal & Lewis, representing defendant.

At the conference, Mr. Sparago explained his failure to pursue the claim for almost two years as follows. He first stated that he was "holding our examinations before trial" until about December of 1968 when he contracted pneumonia, causing him to be confined to his home. He stated that, upon returning to work, he learned about facts similar to those alleged in this complaint, which compelled the plaintiff to file suit against two defendants including American Express in a New York state court in January or February of 1969. Sparago asserted to Judge Higginbotham that he had felt that the state court matter was more urgent and, since he claimed that the same substantive issues were involved, had felt that he could use the facts gathered in the state court suit to aid him in the prosecution of this suit.

When asked whether his firm intended to remain as local counsel, Mr. Quinlan responded:

"Our problem was not a monetary problem. It was simply we had absolutely no information on the case whatsoever. Now we do have the information and we will be willing to commit ourselves to remain as counsel . . . until the conclusion of the action." Feb. 26, 1970 N.T., p. 7.

Later in the conference, Mr. Hogan noted that "[t]he difficulties in communication [with Mr. Sparago] in this case are no secret to the Court, and there is no point in keeping them from the record, but I will say that I make this statement only to avoid any misunderstanding." Feb. 26, 1970 N.T., pp. 12–13. Judge Higginbotham agreed to allow the plaintiff additional time for discovery if plaintiff's local counsel agreed to remain in the case, and Messrs. Quinlan and Hogan agreed. Jan. 6, 1972 N.T. 12–13. Judge Higginbotham told the parties that he would approve reasonable timetables which they set. The following timetables were agreed upon by all counsel and the Court: (1) plaintiff's discovery was to be completed by March 31, 1970; (2) defendant's discovery and answers to plaintiff's discovery was to be completed by April 30, 1970; (3) plaintiff's proposed final pretrial order was to be submitted by April 7, 1970;[3] (4) defendant's proposed final pretrial order was to be submitted by April 14, 1970; and (5) a final pretrial conference was to be held on April 24, 1970. Judge Higginbotham concluded by saying that he believed that the case could be tried in the late spring of 1970.

The next day, February 27, 1970, the defendant noticed the taking of more depositions. On March 18, 1970, the plaintiff filed a set of interrogatories to which the defendant objected on March 31. On April 1, one day after the time allotted for the completion of plaintiff's discovery, the plaintiff filed a notice to take depositions of some officers of American Express (which were never taken). On April 24, 1970, the plaintiff's local counsel presented the court with a motion for continuance and extension of time for discovery in response to which the defendant filed a motion to dismiss. Plaintiff did not file its proposed final pretrial order as required on April 7. The April 24 conference was held as

2. Local counsel is required by Local Civil Rule 10.

3. Judge Higginbotham's Standing Order requiring proposed final pretrial orders is similar to that of the undersigned which is attached as an appendix to this Opinion.

scheduled and although it was intended to be a pretrial conference, it dealt mainly with the plaintiff's motion for continuance and extension. The gravamen of that motion was that the local counsel had misapprehended the nature of the case and misjudged Mr. Sparago by relying on him to provide timely information to local counsel in order to meet the Court's deadlines. Judge Higginbotham reserved his ruling on the motion for continuance until such time as the defendant filed answers to the plaintiff's interrogatories. Defendant's motion to dismiss was withdrawn at the April 24 conference.

Defendant filed its answers to interrogatories on December 15, 1970 and on March 24, 1971, the case was transferred to the docket of the undersigned.[4] On May 28, 1971, the defendant again filed a motion to dismiss this action pursuant to Fed.R.Civ.P. 41(b). This Court scheduled a status call in the case on August 20, 1971. One day before the August 20 call, the plaintiff filed a pretrial memorandum and, at the call, the defendant's Rule 41 motion was voluntarily withdrawn. However, having been informed about the (non) progress of the matter, we stated from the bench our concern about the dilatory fashion in which this case had been handled by the plaintiff and announced that the plaintiff would be held to a strict standard of compliance thenceforward.

A pretrial conference was held in the chambers of the undersigned on September 3, 1971. It was attended by Mr. Sparago, Mr. Hogan and Messrs. She-stack and Kahn. In recognition of the scanty preparation to date by plaintiff and the serious risk of prejudice to the defendant if required to go to trial without more information, counsel for both parties made a most unconventional agreement: to allow the defendant a hiatus of four weeks after the trial of plaintiff's case to prepare its defense. The Court thereupon made applicable its Standing Order pertaining to complex and protracted matters, but modified it so that it applied in two stages to accommodate the staggered trial. A copy of the Standing Order and the modification order are attached as an appendix to this Opinion. Plaintiff was given to October 5, 1971 to file and serve its proposed final pretrial order setting forth plaintiff's proposals as to: (1) uncontested facts; (2) the qualification of expert witnesses; (3) the authenticity and admissibility of plaintiff's exhibits;[5] and (4) the contested issues of fact and law.[6]

On October 7, 1971, two days after the date that plaintiff's proposed final pretrial order was due to be filed and served, the Court received a letter from plaintiff's local counsel (the letter was apparently written on October 4), which requested an extension of time for filing the proposed final pretrial order. Local counsel stated that it was their understanding that Mr. Sparago had been given sixty days from the September 3 conference in which to submit the final pretrial order. The Court thereupon granted Mr. Sparago an extension until November 15, 1971, two weeks longer than he had (misunderstandingly) anticipated, in order to comply.

---

4. The transfer was due to a general reassignment of cases prompted by the addition of six new judges to this Court pursuant to an Omnibus Judgeship Bill.

5. The Court's Pretrial Order of September 27 defines exhibits as follows:

"7. The term 'exhibits,' as used in the court's Standing Order, for purposes of this action, shall be deemed to include statistical summaries, schedules, computations, (and) tables which the parties intend to offer, including source material upon which such exhibits are based."

6. The parties acknowledge that they were informed of their obligations at the September 3, 1971 conference, which was in chambers and was not reported. Jan. 6, 1972 N.T. pp. 8–9. A pretrial order setting forth the parties' obligations was filed of record on September 27, 1971.

Notwithstanding, the extension, Mr. Sparago did not file his proposed final pretrial order and has not filed it since that time. On November 23, 1971, Mr. Shestack wrote, asking us to dismiss the action for the plaintiff's most recent failure to comply with a court order. We informed all counsel that we would treat this letter as a renewed Rule 41 motion to dismiss and notified them of a hearing to be held on January 6, 1972 on the motion. The transcript of the hearing confirms that Mr. Sparago was aware of the hearing; however, he did not appear and did not write the Court setting forth his reasons for failure to appear. Neither did he provide local counsel with any explanation for his nonappearance, for Mr. Hogan could not offer any. Mr. Hogan stated that it was his firm's understanding with Mr. Sparago that Sparago was responsible for all of the pleadings, discovery and preparation and for the trial itself. Accordingly, Mr. Sparago had not furnished Mr. Hogan or anyone in his firm with information with which to prepare the proposed final pretrial order. In fact, Mr. Hogan informed the Court that he had not heard from Mr. Sparago from September 3, 1971 until January 5, 1972, the day before the hearing, when Sparago had called to tell him that he was mailing "materials which should fit the form of a proposed pretrial order. . . ." Mr. Hogan stated that "presumably, they will not be in final legal form." Hearing Jan. 5, 1972 N.T. 26. Each side was given a full opportunity to present its argument vis-a-vis dismissal but local counsel for the plaintiff ultimately said, "I come not to argue but to report . . ." *Id.* at 26. Notwithstanding the bifurcated nature of the trial, Mr. Shestack represented that there must be a great deal of preparation by the defendant in time and money ($20,000 to $30,000). Furthermore, he asserted that the plaintiff's failure to pursue discovery and define issues and facts had seriously prejudiced the defendant's ability to defend (see discussion *infra*). The hearing concluded and we took the matter under advisement.

### III.

In our view, the facts make out a case for dismissal of the plaintiff's cause of action on two separate and distinct grounds, both of which are embodied in Fed.R.Civ.P. 41(b): (1) plaintiff's failure to comply with orders of court; and (2) plaintiff's failure to diligently prosecute its case for more than four years.

■ The Court's discretionary power to dismiss for failure to comply with an order of the Court has two sources; one is the express provisions of Rule 41(b), and the other lies in its inherent powers. This power must be exercised in appropriate situations to protect the integrity of the Court and its orders. Link v. Wabash R.R. Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

■ Several considerations should be noted at the outset. This is not a case where there is any inadvertence or excusable neglect; neither is it a case of a series of minor infractions, for the orders that were violated are fundamental to the defendant's ability to defend this action. Moreover, this is not a case where there has been only one violation of a court order. In Fischer v. Buehl, 450 F.2d 950 (3d Cir. 1971), the court held the fact that an attorney failed to appear for a pretrial conference in a wrongful death case, after he had attempted to telephone the judge, and had ultimately sent, as a replacement, a lawyer unfamiliar with the case, did not justify a dismissal. This case is readily distinguishable from *Fischer* because, as opposed to a single violation, Mr. Sparago has repeatedly violated orders of both Judge Higginbotham and the undersigned fixing deadlines as to the completion of discovery, the filing of pretrial memoranda and the filing of proposed final pretrial orders. This case is distinguishable from *Fischer* for another important reason. *Fischer* involved a rather routine right

angle collision;[7] this case is an involved antitrust case where the delinquency of plaintiff's counsel: (1) has prejudiced the ability of the defendant to defend; and (2) will result, if the matter proceeds to trial, in a cumbersome event in which the trial promises to be a prolonged discovery session.

Apposite to this case is Von Poppenheim v. Portland Boxing & Wrestling Comm., 442 F.2d 1047 (9th Cir. 1971). In *Von Poppenheim,* fourteen months after the filing of the antitrust complaint, the plaintiff told the trial judge that he could complete his trial preparation in thirty or sixty days. Therefore, the court issued a pretrial order to be complied with within sixty days, requiring the plaintiff to give a specific statement as to what the conspiracy consisted of, the role each party played in the conspiracy, the names of witnesses, and the anticipated testimony of the witnesses. Eleven months later, after several unsuccessful efforts to comply with the order, the district court dismissed the action for failure to comply with the court order. The Court of Appeals affirmed. As in this case, the court in *Von Poppenheim* noted that the crux of the problem was the plaintiff's failure to inform the defendants sufficiently of the basis of the claim or the facts upon which the plaintiff was relying to enable the defendants to prepare its defense. We agree with the court's observations in *Von Poppenheim:*

> "Somewhere along the line, the rights of the defendant to be free from costly and harassing litigation must be considered. So too must the time and energies of our courts and the rights of would-be litigants awaiting their turns

to have other matters resolved. The exact point on that line is incapable of exact definition, but we are satisfied that the present case went beyond it." Von Poppenheim v. Portland Boxing & Wrestling Comm., *supra* at 1054.

## IV.

The facts which have been recited demonstrate that the plaintiff has not seriously prosecuted its antitrust claim.[8] An antitrust suit for attempted monopolization is one of the most difficult and complex of all cases to try. Extensive discovery, including detailed analyses of the defendant's books and financial records, is essential to the orderly trial of such a case. Yet there has been virtually no discovery; there has been no request or motion to inspect documents, no requests for admissions, and no depositions taken of anyone. Mr. Sparago conceded at the pretrial conference before us that no expert economic analysis had been made. The Court and the defendant in this monopolization case are still "in the dark" on something so central to a monopolization case as the identity of the relevant market.[9] Mr. Sparago asserted that he would accomplish, by virtue of the Court's final pretrial order, and by subpoena at trial what he had missed in discovery. And yet, he has failed to perform his part of the pretrial order procedure. We agree with Judge Higginbotham's statements at his April 24, 1970 pretrial conference:

> "If you require someone to go to trial the trial becomes really the discovery. So that the case which could be disposed of by stipulations and many other matters just eats up days and

7. The Court is familiar with *Fischer;* on remand, it was assigned to our docket. After two short pretrial conferences, the case is on the brink of settlement; all counsel have agreed to a figure and we await only the plaintiffs' approval.

8. While not the basis for our decision, the Court's impression of the intentions of

Mr. Sparago, garnered from his presence at the pretrial conference, is in accord with this conclusion.

9. Similar analysis could be made of the plaintiff's allegations under § 1 of the Sherman Act which are equally ill-defined of record at this late stage in the proceedings.

weeks of trial sometimes because, really, the plaintiff is doing his discovery under the guise of being on trial."

At the core of the Federal Rules is the notion that full pretrial disclosure of facts and theories by way of discovery will expedite a trial. Take the relevant market concept for example. The market concept cannot be shown only through the questioning of witnesses; it must be defined through statistical analysis, financial data, records, etc. It would be a disservice to the parties and the Court to go to trial without such information. Without adequate discovery and compliance with the Court's pretrial order, the trial would be a hopeless morass. In addition, forcing the defendant to trial on these terms would severely prejudice its ability to defend. Mr. Shestack has estimated that trial preparation in a matter such as this would ordinarily run in the range of twenty to thirty thousand dollars; under the circumstances here, the defendant could expend that sum and not be certain of what it was defending against. Defendant agreed to help extricate plaintiff from its plight by agreeing to a rather unconventionally bifurcated trial, but plaintiff did not return the favor.[10]

We recognize that dismissal of a cause of action for failure to prosecute is a drastic sanction which should not lightly be exercised. But, the sanction of dismissal is allowed to prevent undue delays in the disposition of pending cases and to avoid congestion in the courts. Link v. Wabash R.R. Co., 370 U.S. 636, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); Kenney v. Calif. Tanker Co., 381 F.2d 775 (3d Cir. 1967). It is true that those reasons for allowing dismissal must be weighed against the policy of the law which favors disposition of litigation on its merits. Dyotherm Corp. v. Tubo Ma-

chine Co., 392 F.2d 146 (3d Cir. 1968). Balancing these factors, we conclude that this case should be dismissed.

This is not the ordinary case where an unfortunate client is held accountable for the lethargic lawyer. Here the man in charge of this litigation is the house counsel and a director of the plaintiff corporation. *See,* Spering v. Texas Butadiene and Chemical Corp., 434 F.2d 677 (3d Cir. 1970). The record is replete with references to communication problems that the local counsel had with Mr. Sparago throughout the course of this litigation. Moreover, Mr. Sparago was present at several conferences when the judges expressed their dissatisfaction with the manner in which the litigation was being conducted. He cannot now complain that he has not been put on notice that a dismissal was a realistic alternative to his inaction.

## APPENDIX

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## STANDING ORDER RE PRETRIAL CONFERENCE IN CERTAIN CASES BEFORE

## JUDGE BECKER

I. A final pretrial conference will be scheduled by the Court prior to the date it is estimated that the case will be reached for trial. Notice of such final pretrial conference will be given to all counsel in sufficient time so that they may, and they are hereby directed to confer in advance of such pretrial conference for the following purposes;

   A. Enter into a comprehensive written stipulation of all uncontested facts in such form that it can be

---

10. While reliance upon it is unnecessary, States Steamship Co. v. Philippine Air Lines, 426 F.2d 803 (9th Cir. 1970) holds that it is not necessary for the court to find specific impairment of the defendant's defenses, for the law presumes injury from unreasonable delay.

submitted to the Court or read to the jury as evidence at the trial. If the admissibility of some uncontested facts is challenged, the party objecting and the grounds for objection must be stated.

B. Enter into written stipulations setting forth the qualifications of all expert witnesses in such form that they can be submitted to the Court or read to the jury at the time the expert witness takes the stand.

C. Exchange lists of potential witnesses.

D. Exchange, examine, mark and prepare a formal list of all documentary and other exhibits which any of them intend to introduce at the trial.

E. Agree as to the authenticity and admissibility of such exhibits so far as possible and note the grounds for objection to any not so agreed upon.

F. Agree so far as possible and prepare a statement of the contested issues of fact and law.

G. Examine and prepare a list of all depositions to be read into evidence and agree as to those portions to be read. The parties shall make a good faith effort to purge the depositions of all colloquy and irrelevant matter. If any party objects to the admissibility of any portion, the name of the party objecting and the grounds shall be set forth.

H. Explore the prospects of settlement.

II. At the final pretrial conference, which shall be attended by attorneys representing all parties and authorized to enter into such agreements as may be appropriate, presumably the counsel who are to try the case, counsel shall submit to the Court a Final Pretrial Order in the form prescribed and containing the following:

A. The comprehensive written stipulations of all uncontested facts.

B. The written stipulations setting forth the qualifications of all expert witnesses.

C. Schedules of all exhibits which will be offered in evidence at the trial, together with an indication of those agreed to be admissible and the grounds for objection to any not so agreed upon. Only exhibits so listed shall be offered in evidence at the trial except for good cause shown.

D. The names and addresses of all prospective witnesses. Only witnesses so listed will be permitted to testify at the trial except for good cause shown.

E. An agreed statement of the contested issues of fact and law supplemented by separate statements if necessary of additional contested issues of fact and law not agreed to by all parties.

F. An itemized statement of special damages.

G. A list of depositions to be offered in evidence and a statement of any objections to the receipt in evidence of portions of any such depositions identifying the objecting party and the grounds.

H. Written waivers of claims or defenses, if any.

III. At such final pretrial conference the Court will consider the simplification of the issues, the necessity or desirability of amendments to the pleadings, the separation of issues, the desirability of an impartial medical examination, the limitation of the number of expert witnesses, the probable length of the trial, the desirability of trial briefs, the prospects of settlement, and

such other matters as may aid in the trial or other disposition of the action.

IV. At the conclusion of such pretrial conference, an appropriate order will be entered reflecting the action taken at such conference and the case added to the Court's Trial Calendar. Failure of counsel to appear at any scheduled pretrial conference or otherwise to comply with the provisions of this order may result in dismissal or default as may be appropriate.

[s] Edward R. Becker
United States District Judge