No. 88-195

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

THOMAS CHISHOLM AND DONALD CHISHOLM,

        Plaintiffs and Appellants,

  -vs-

FIRST NATIONAL BANK OF GLASGOW,

        Defendant and Respondent.

_____

APPEAL FROM: District Court of the Seventeenth Judicial District,
In and for the County of Valley,
The Honorable B.W. Thomas, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Dennis Patrick Conner, Great Falls, Montana
Charles S. Lucero, Great Falls, Montana

    For Respondent:

        Jacque W. Best; Habedank, Cumming, Best, Maltese and
Savage, Sidney, Montana

_____

Submitted on Briefs: Oct. 13, 1988

Decided: December 22. 1988

Filed:

_____

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal comes from an amended order of the District Court of the Seventeenth Judicial District, Valley County, Montana, in which appellants' action was dismissed and judgment was entered in favor of respondent. We affirm.

The District Court's original order dismissed all claims dependent upon the appellants' ownership of certain property which they alleged they were wrongfully deprived. The District Court ordered a later hearing to determine which issues in the complaint remained. By an amended order, from which this appeal arises, all of the appellants' claims were dismissed and judgment was entered for the respondent.

Two issues are presented for our review:

1. Did the District Court abuse its discretion by dismissing any of the claims against the bank?

2. Even if the District Court's dismissal under Rule 41(b) was proper, was it error to dismiss all claims in the complaint?

We begin by noting that dismissal under Rule 41(b), M.R.Civ.P. is a harsh remedy. Because the result is severe, courts should refrain from dismissing an action or claim unless there is no other adequate remedy available and where the facts sufficiently call for such a result. The facts of this case are numerous and the District Court file abundant. Yet, stripped from the morass are those facts which lead to our affirmance of the District Court order.

Appellants are the owners of a masonry business in Shelby, Montana. In 1979, the appellants started a new business venture in Glasgow, Montana, involving the manufacture of cement blocks. The respondent, First National Bank of Glasgow, made loans to the appellants in order for

2

them to get the business started. The appellants were unable to make the Glasgow business survive, and in October, 1982, appellants turned the business over to Nelson Corscadden.

In 1983, appellants sought to recover certain equipment in Corscadden's possession which appellants alleged belonged to their Shelby business and was not part of the transferred Glasgow business. Corscadden denied appellants' allegations and refused to hand over the equipment. Appellants filed a complaint against Corscadden in September, 1983, alleging conversion of their property. In February, 1984, before the case came to trial, Corscadden filed a Chapter 11 Bankruptcy Petition, and the state court action against Corscadden was automatically stayed.

Appellants, on August 1, 1984, filed a complaint against the respondent (hereinafter referred to as bank) in Cascade County, alleging the bank had secretly conspired to deprive the appellants of the property rights to the equipment held by Corscadden. That suit was transferred to Valley County District Court on September 27, 1984.

The appellants filed a proof of claim against Corscadden in the Bankruptcy Court on August 14, 1984. At the same time, appellants moved the Bankruptcy Court to lift the automatic stay in order for them to proceed against Corscadden and the bank before a jury in the state district court. The Bankruptcy Court took no action on that motion.

In April, 1985, appellants renewed their motion before the Bankruptcy Court to lift the automatic stay. The Bankruptcy Court denied the motion and requested the appellants file an adversary complaint. The court added that this was a core issue and with a complaint filed, the issue would be resolved in June of that year. No adversary complaint was filed.

3

The bank moved the District Court for partial summary judgment on March 13, 1986. The bank requested the District Court to abstain from asserting jurisdiction over the property ownership dispute, claiming the Bankruptcy Court had exclusive jurisdiction. On March 27, 1986, during the hearing on this motion, appellants' previous attorney, Erik Thueson, resisted the motion to abstain, arguing the issue should be heard in state court before a jury because "[i]n a State Court, my clients are entitled to certain rights of due process . . . In a Bankruptcy Court this is untrue."

On April 18, 1986, District Court Judge R. C. McDonough, (who is now a member of this Court) entered an order in which he ruled the Bankruptcy Court had exclusive jurisdiction to decide the property dispute, and further noted that the Bankruptcy Court had specifically refused to allow the state court to decide the issue. The order stated that a determination in state District Court could well lead to inconsistent adjudication, and that no significant burden would result by having the issue adjudicated in Bankruptcy Court. Most importantly, however, the order read in pertinent part:

> IT IS THEREFORE ORDERED that the pre-trial and trial of this action are hereby VACATED in order to give the Plaintiffs the opportunity to have the issue of the ownership of this property be decided in Bankruptcy Court and make a report to this Court within sixty (60) days as to their progress. If the decision on this issue is not diligently pursued by the Plaintiffs, the Court will consider a renewal of the motion by the Defendant precluding this Court from asserting jurisdiction to decide the ownership of the property. (Emphasis added.)

4

There was nothing uncertain or ambiguous about the order. Its clear purpose was to have the ownership issue settled, either by adjudication in the Bankruptcy Court, or through agreement with Corscadden that one of the parties was the rightful owner of the equipment.

Appellants, dissatisfied with this order, filed a petition for a writ of mandamus with this Court, seeking to have this order withdrawn and a trial rescheduled in the District Court. On December 30, 1986, we denied the petition, finding there was a plain, speedy and adequate remedy in the Bankruptcy Court. State ex rel. Chisholm v. District Court (Mont. 1986), 731 P.2d 324, 43 St.Rep. 2317.

On February 6, 1987, appellants filed what they denominated "Motion For Appropriate Action" in the Bankruptcy Court. By this motion, appellants requested the Bankruptcy Court to either proceed on the issue before a jury, or to lift the automatic stay of the state district court action. Although both requests were previously denied by the Bankruptcy Court, appellants renewed their requests under the guise of a motion for appropriate action. Quite clearly, attorney Theuson was not only dissatisfied with his position, but he refused to accept it.

On March 3, 1987, the bank filed a renewed motion for partial summary judgment and motion to abstain. In its memorandum in support, the bank gave the District Court a chronology of events of the case. Further, the bank noted that appellants had not only failed to file an adversary proceeding in Bankruptcy Court, but had also failed to report their progress on the resolution of the ownership issue to the District Court as required by the April 18, 1986, District Court order.

After a hearing before the District Court on March 17, 1987, the bank's motion was denied as "premature." However,

5

Judge McDonough required appellants to make a report to the court within sixty days on the progress made in resolving this issue. On April 14, 1987, Thueson wrote a letter to Judge McDonough which stated little more than "[appellants] continue to run into snags that are slowing the disposition of the bankruptcy matter down."

On July 7, 1987, the bank moved for involuntary dismissal of the appellants' action. On August 17, 1987, the District Court heard arguments from counsel for both parties on the bank's motion. Attorney Theuson assured the court that the ownership issue had been resolved and that a signed settlement agreement would be filed forthwith.

On September 25, 1987, the District Court, having no settlement agreement before it, issued an order in a final attempt to force resolution of the property ownership issue. That order read in pertinent part:

> Since there remains doubt as to whether the matter has been settled between the parties, and because this case cannot proceed until the bankruptcy decision has been rendered, or a settlement reached by the parties, IT IS ORDERED that plaintiffs have sixty (60) additional days within which to furnish this Court with proof that the bankruptcy issues have been settled and compromised. If no such compromise is reached within 60 days, plaintiffs must furnish this Court with proof that a timely request has been made by them to the bankruptcy court to schedule this matter for adversarial hearing at the earliest convenient time. If plaintiffs fail to furnish either (a) proof of settlement or (b) proof of diligent pursual of the adversarial hearing in bankruptcy court, this Court will then entertain a renewed Motion by defendant for involuntary dismissal of this action with prejudice.

On November 30, 1987, the bank moved for involuntary dismissal under Rule 41(b), specifically noting that appellants had failed to furnish proof of settlement or pursual of an adjudication in Bankruptcy Court. A copy of the settlement agreement was ultimately filed with the District Court. Attached as an exhibit to appellants' response brief to the bank's motion was a so-called "Mutual Release Of All Claims," dated July 31, 1987. Nonetheless, the District Court was not apprised of the settlement until December 14, 1987, and a stipulation for dismissal without prejudice of the Bankruptcy claim was not executed by the appellants' attorney and Corscadden's attorney until December 10, 1987.

In their second response brief to the bank's motion for involuntary dismissal, appellants argued that a settlement was "sanctioned" by Judge McDonough, and the court should "finally set a trial date so this matter can be resolved." Appellants further stated:

> Defendant next contends that the "Mutual Release" does not resolve the issue of ownership. To the contrary, the Chisholms, through the Mutual Release, have given up and surrendered their legal claims against Corscadden.
>
> . . .
>
> The defendant also argues that there can be no settlement where there is no resolution of ownership. This is untrue. By definition, settlement is entered into by the parties to resolve a conflict short of factual finding concerning the issues in the case. At any rate, the settlement resolves ownership.

It is quite obvious that appellants are talking out of both sides of their mouth. They wanted to resolve the ownership issue, thereby complying with the various court

7

orders, yet they did not want to be bound by that disposition of the issue as it affects their suit against the bank. By presenting the District Court with the late-filed "Mutual Release," the appellants said to the court in essence: Here is the ownership issue right back in your lap, Judge, we are finally going to get a trial of this issue before a jury in state district court. As did the District Judge, we refuse to condone such a position.

On February 2, 1988, presiding District Judge B.W. Thomas entered a memorandum order granting the bank's motion for involuntary dismissal. The court ordered dismissal of all claims which were dependent on appellants' ownership of the disputed property. The court reasoned that either (1) the settlement will be accepted as being timely made and interpreted as fully conceding the ownership rights of Corscadden; (2) the appellants would be deemed as having refused to resolve the issue as required by Judge McDonough's order of April 18, 1986; or (3) the appellants would have failed to diligently prosecute the action against the bank by refusing to have the ownership issue resolved. The court held that on any basis, dismissal would result.

On February 9, 1988, the bank moved the District Court to modify its February 2, 1988 order to dismiss all claims in the appellants' complaint because, they alleged, all claims were dependent on the ownership of the property. In an amended order and judgment for the bank dated March 25, 1988, the District Court ordered:

> 1. The motion to dismiss is granted insofar as all claims of plaintiffs which are dependent on the issue of whether plaintiffs were wrongfully deprived of the ownership of their property are concerned.

8

2. Since all claims of plaintiffs' complaint are dependent upon the issue of whether plaintiffs were wrongfully deprived of the ownership of the disputed property, all claims (claims I-V) are hereby dismissed with prejudice because of plaintiffs' failure to prosecute diligently, and their failure to comply with orders of this Court.

Rule 41(b), M.R.Civ.P., provides:

Involuntary dismissal - effect thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or failure to join a party under Rule 19, operates as an adjudication upon the merits.

It is undisputed that it is within the sound discretion of the District Court to dismiss an action under Rule 41(b), M.R.Civ.P., Brymerski v. City of Great Falls (1981), 195 Mont. 428, 636 P.2d 846, and we encourage the cautious exercise of that discretion. As stated in Von Poppenheim v. Portland Boxing Comm. (9th Cir. 1971), 442 F.2d 1047, 1049, cert. denied 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731:

Because a dismissal under Rule 41(b) is such a harsh remedy, and because such dismissals are frequently occasioned by inattention of counsel rather than by plaintiff's own wrongdoing, courts are rightfully reluctant to employ 41(b) sanctions for failure to comply with an order of the court . . . It is equally clear, however, that aggravated circumstances may make dismissal under 41(b) appropriate . . . In those cases the district judge will be reversed only

if he has abused his discretion in dismissing the action.

In this case, the dismissal grounds for failure to prosecute was the result of the appellants' failure to comply with the court's order to resolve the issue. The appellants were fully warned that their continuing failure to resolve the ownership issue would result in dismissal. The appellants' noncompliance with the District Court's order was a flagrant attempt to avoid resolution of the ownership issue in Bankruptcy Court. As a result, dismissal was proper.

For some tactical reason, appellants' attorney willfully and deliberately chose to ignore the court orders. Now, nearly five years after the actions complained of took place, and some four and one-half years after the complaint against the bank was filed, the appellants argue that the issue should be resolved in the District Court. Had the appellants complied with the request of the Bankruptcy Court to file an adversary proceeding, or with the direct order of the District Court, this issue could have been resolved, one way or another, as early as June of 1985. We refuse to condone such contumacious and deliberate disobedience to reasonable and lawful court orders. We conclude that the District Court, with great patience, properly exercised its discretion, without abuse.

The appellants next claim that the District Court erred in dismissing all of the claims against the bank. They argue that even if the District Court correctly dismissed those claims dependent on whether the appellants were wrongfully deprived of the disputed property, it nonetheless erred in concluding that all claims in the complaint were dependent on that issue. We disagree.

Rule 41(b) clearly provides for the dismissal of a claim or an action. The District Court was not bound to

10

# CORRECTION

Date 1/13/8̶9̶

EDITORIAL DEPARTMENT
West Publishing Co., P.O. Box 3526, St. Paul, MN 55165

Please make the following correction in the opinion in the case of:

Title: Co #88-195 - Thomas & Donald Chisholm

vs First National Bank of Glasgow

~~Vol.~~ Opinion Rendered 12/22/88 ~~Rptr.~~ Page 11 & 12

In first/second column, line _____ from top/bottom.

Remove Justice Hunt's signature from majority opinion. Add Justice Hunt's concurrence with Justice Sheehy

should read _____

Signed _William E. Hunt_, J.

The expense of making changes is such that we cannot undertake it for items of merely typographical style.

West Publishing Co.

N182c

dismiss only certain of appellants' claims which were related to the court order with which they refused to comply. It was fully within the discretion of the District Court to dismiss the entire action against the bank. The amended order states:

> [A]ll claims (claims I-V) are hereby dismissed with prejudice because of plaintiffs' failure to prosecute diligently, and their failure to comply with orders of this Court.

We find the dismissal of the appellants' action against the bank was not an abuse of discretion. The amended order and judgment are affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

11

Mr. Justice John C. Sheehy specially concurring:

I concur with the result here. Since this Court and the District Court felt that the ownership of the property was a core issue in the state court action, it was proper to require Chisholm to proceed in bankruptcy court. But even the bankruptcy court seemed of the opinion that the bank case was outside the bankruptcy court's dominion (see dissent, J. Morrison, Chisholm, 731 P.2d at 326). An attorney should not be castigated for representing his client in murky waters.

_____
                Justice


Mr. Justice William E. Hunt, Sr.:

I concur with Mr. Justice Sheehy

_____
                Justice