John **DOWDELL** et al., Plaintiffs,

v.

**SUNSHINE BISCUITS, INC.,** et al., Defendants.

Civ. A. No. 78–26–COL.

United States District Court,
M. D. Georgia,
Columbus Division.

April 23, 1981.

Sanford D. Bishop, Jr., Columbus, Ga., for plaintiffs.

Robert S. Giolito and W. Lyman Dillon, Atlanta, Ga., for defendants.

OWENS, Chief Judge:

This action was instituted on February 14, 1978, by seven black employees of Sunshine Biscuits, Inc., individually and in behalf of all others similarly situated, against Sunshine Biscuits, Inc., and Local 435, Bakery and Confectionary Workers International Union of America. The complaint alleges, in essence, ten separate claims of discrimination and disparate treatment in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C.A. § 2000e, *et seq.*, and 42 U.S.C.A. § 1981. By order dated September 17, 1980, this court denied certification of the class. The question presently before the court upon repeated motions of both defendants is whether this action should be dismissed pursuant to Rule 37(b) and Rule 41(b), Federal Rules of Civil Procedure, for failure of the named plaintiffs to prosecute this action and to comply with orders of this court and with the Federal Rules of Civil Procedure, and for failure to provide discovery.[1]

### FACTS SUPPORTING DISMISSAL

A. Failure of plaintiffs to prosecute and to comply with orders of the court and with the Federal Rules of Civil Procedure.

Plaintiffs failed to institute any discovery whatsoever until August 31, 1979, over eighteen months after the February 14, 1978, filing of this Title VII action, although plaintiffs' counsel represented to the court and opposing counsel on a number of occasions during that time that interrogatories to defendants would be forthcoming. (*See,* Plaintiffs' November 17, 1978, motion for protective order; Plaintiffs' counsel's letter to court dated January 29, 1979.) Such failure was in violation of this court's Procedures and Policies requiring discovery to be complete within four months from service of the complaint absent the court's permission to engage in discovery for a longer period. The court admonished plaintiffs' counsel by letters dated November 20, 1978, and January 31, 1979, that the burden was upon plaintiffs to proceed with discovery and to prepare their case, and that the court expected them to do so immediately. Pursuant to the court's directions plaintiffs' attorneys submitted a "Schedule of Pre-Trial Discovery" which contemplated completion of discovery by May 1, 1979, and which the court approved by order dated January 16, 1979. Plaintiffs completely failed to abide by their discovery schedule. *See,* August 16, 1979, Memorandum of Defendant Sunshine in Support of Motion Opposing a Class Action.

---

1. Plaintiffs Willie Davis and Frederick Phillips have withdrawn as parties to this suit.

Although Rule 23(c), Federal Rules of Civil Procedure, calls for determination of the class status "as soon as practicable after the commencement of an action, and although this court, by order dated July 27, 1978, directed the parties to proceed only with the class certification question, plaintiffs took no action to initiate discovery and made no effort to meet their burden of presenting the court with a motion for class certification. In fact, it was the defendants who were forced to take the initiative and moved the court to deny class certification by motion dated August 16, 1979.

Finally, on August 31, 1979, eighteen months after this action was filed, plaintiffs submitted their first interrogatories to defendant Sunshine Biscuits, Inc., along with a request for production of documents and things and entry upon land for inspection. Plaintiffs served upon defendants eighty interrogatories, in violation of this court's local rule limiting interrogatories to twenty. Defendant Sunshine made legitimate objections to these excessive and overbroad interrogatories and request for production of documents and moved the court for a protective order, and plaintiffs moved for an order compelling discovery. The court held a conference on December 18, 1979, at the request of defendants in order to break up this logjam and give some needed direction to the case.

At this conference the court admonished plaintiffs' attorneys that the court was concerned with their lack of prosecution of the case and that unless they associated other counsel the court would be obligated to deny certification of the class. (Conf. Transcript p. 7). Plaintiffs' attorneys thereafter failed to obtain any assistance with the case. It was made clear at this conference that the parties were to proceed with discovery on the class issue with a goal of holding an evidentiary hearing on this issue sometime soon after May 1, 1979, a date by which plaintiffs' attorneys assured the court they would have completed discovery on the class issue. It was also made clear at the conference that defendant Sunshine would allow plaintiffs' attorneys to tour the plant, which they did on December 28, 1979,

and would make available to plaintiffs' attorneys for inspection various documents such as seniority lists, personnel files, bid sheets, disciplinary reports, and grievance files. Plaintiffs viewed samples of these documents on December 28, 1979, with the objective of narrowing the scope of the documents and information being requested. All of the documents requested by plaintiffs' attorneys were made available to them for inspection at the Sunshine plant beginning January 14, 1979.

Thereafter a further discovery dispute arose due to plaintiffs' attorneys' insistence on copying all of the hundreds of documents made available by defendant Sunshine, including *all* personnel records, *all* disciplinary reports, etc., rather than merely inspecting all of those documents and copying the relevant portions, which was the procedure discussed at the December, 1978, conference. Plaintiffs' counsel informed opposing counsel of their intentions to discuss the copied documents with the individual plaintiffs, which the court at the December 1979 conference had expressly ruled would not be allowed. (Conf. Transcript p. 28). Defendants moved the court for a protective order to prevent disclosure of confidential information in the personnel files such as medical reports, financial matters, and criminal records of Sunshine's employees, etc., matters which the court expressly stated at the December, 1979, conference might necessitate an appropriate protective order. (Conf. Transcript p. 27). In spite of plaintiffs' attorneys' promise to be ready on the class issue by May 1, 1981, they failed to inform the court of any discovery problems until May 27, 1980. Although all documents requested by plaintiffs' counsel were made available at the Sunshine plant for inspection, plaintiffs' counsel had not reviewed a single document during the four months from January 14th through May 27th. Counsel for plaintiffs also did not move the court for a discovery conference as contemplated by Rule 26(f), Federal Rules of Civil Procedure, and which the court had invited counsel to do if any problem arose. (Conf. Transcript p. 48). On

June 23, 1980, plaintiffs moved the court for an order compelling discovery. On that same day defendant Sunshine filed its first motion to dismiss this action under Rules 37(b) and 41(b), Federal Rules of Civil Procedure.

On September 17, 1980, the court held a pre-trial conference. Plaintiffs' attorneys were unable at this point to give any specific instances of alleged discrimination supporting plaintiffs' claims. Counsel had not yet even copied the records of the named plaintiffs. (Conf. Transcript p. 32). The court again expressed its concern over plaintiffs' attorneys' inexcusable delays in preparing the case (Conf. Transcript pp. 1–2, 10–11, 23, 37–39), and informed counsel that in the court's best judgment counsel could not adequately represent the class. The deadlock in discovery was discussed and resolved and the court clearly and emphatically warned plaintiffs' counsel that they must prepare the case as to the individual plaintiffs or suffer dismissal, to wit:

"THE COURT: Let me tell you something. I'm going to tell you what I'm going to do. I'm going to set this case down *after December 1st* and I'm going to give you from now until then to go out to that plant and examine the files if you want to, and after you find something you want to copy if they then won't let you copy it, write it down on a sheet of paper and tell me what the subject matter is and I'll be glad to hear from you. But this thing of giving you a before the fact blanket approval is ridiculous, to go out there and just copy whatever I want; that is not the purpose of discovery, and *all we are going to try is your individual plaintiffs' claims. And if you are not ready by December 1st, the Court is going to dismiss the lawsuit for failure to prosecute, and I am putting you on notice right now.*

MR. BISHOP: *That's fine, Your Honor.* That is fine and if we have any problems we will certainly make the Court aware of it." (Emphasis supplied). Conf. Transcript p. 44.

Immediately following the pre-trial the court entered an order denying certification of the class due to the demonstrated inability of plaintiffs and their attorneys to adequately represent the class of black employees.

On January 15, 1981, counsel for all parties had a third conference with the court. It became obvious at this conference that plaintiffs were little more prepared for trial on December 1, 1980, than they had been at the time of the September 1980 conference. Plaintiffs' portion of the pre-trial order failed to delineate any specifics as to the individual claims of the plaintiffs, and failed to list specific exhibits and witnesses as required. Counsel was still unable to state to the court the specifics of the individual plaintiffs' claims. A large number of interrogatories from the defendants remained to be answered. Defendants' counsel informed the court at the conference that plaintiffs' discovery since the September conference had consisted of a secretary visiting the Sunshine plant on five days during October in order to copy documents, and of Mr. Allen's visiting the plant on December 9, 10, and 11, 1980. Mr. Allen also copied documents at the Union Hall on October 10, 1980. While plaintiffs' attorneys had copied hundreds of documents, their January 12, 1981, pre-trial order contemplated "further discovery" and refers to exhibits which had not yet been copied. Further, it appeared at the conference that analysis of these hundreds of documents was far from complete. Because of plaintiffs' counsel's continuing unjustifiable delays in preparing plaintiffs' case, the court informed counsel at the conclusion of the conference that the court was inclined, subject to a review of the record, to grant defendants' motions to dismiss plaintiffs' case for failure to prosecute and to comply with orders of the court and with the Federal Rules of Civil Procedure. (Conf. Transcript p. 51–52).

B. Failure to provide discovery.

The defendant Union filed its first interrogatories to plaintiffs on April 10, 1978. None of these interrogatories were answer-

ed within the thirty-day period required by Rule 33, Federal Rules of Civil Procedure. After several lengthy extensions of the time for filing responses, which plaintiffs' counsel claims were necessitated by "uncertainties in [his] personal schedule," and after several unfulfilled promises by plaintiffs' counsel to submit responses by specified dates, plaintiffs finally submitted responses to twelve of the Union's interrogatories on November 7, 1978, seven months after service of the interrogatories.

At the December 18, 1979, conference the court ordered plaintiffs to answer with specifics the remaining first interrogatories of defendant Union by April 1, 1980. Defendant Union's second set of interrogatories, calling for information on the class question, was served on February 9, 1979, and remained unanswered at the time of the December, 1979, conference. The court ordered that these interrogatories also be answered by April 1, 1980. No answers were submitted prior to the court's September 1980 order denying class certification. Thereafter, the parties engaged in the long dispute over the wholesale copying of documents by plaintiffs' attorneys and the problem of an appropriate protective order to prevent disclosure of confidential information in the records of Sunshine's employees. Although defendant Sunshine refused to allow plaintiffs' attorneys to copy all of the documents made available at the Sunshine plant, those documents were available for inspection and for copying of portions of the records relevant to this lawsuit. Plaintiffs were thus able to obtain the information necessary to answer at least some of the interrogatories; nevertheless, no further responses were submitted by April 1, 1980, or for over five months thereafter.

At the September 17, 1980, pre-trial conference the court ordered plaintiffs to submit specific answers to the Union's remaining interrogatories by October 1, 1980, with supplemental answers by October 15, 1980, or suffer dismissal of the Union defendants from this action. On October 3, 1980, plaintiffs filed answers to the remaining first interrogatories of defendant Union. These answers were incomplete and improperly verified. (*See*, December 1, 1980, Motion of Defendant Union to Dismiss). Although defendant Union requested more complete answers by October 15, 1980, no such answers have been submitted.

On November 14, 1980, defendant Sunshine served five damage interrogatories to each of the named plaintiffs. Answers to these interrogatories should have been served by December 10, 1980. On December 12, 1980, counsel for plaintiffs filed a motion for an extension of time until December 31, 1980, which the court granted. Answers to these damage interrogatories were not filed until January 15, 1981, the day of the third pretrial conference. These answers contained no specifics as to the amount of back pay claimed. At the conference the court cautioned plaintiffs' attorneys that unless the court received by five o'clock on Monday, January 26 "verified answers setting forth the dollars and cents damages allegedly sustained by each individual plaintiff," the case would automatically stand dismissed pursuant to the existing motions of defendants. (Conf. Transcript p. 20). *Proper answers to the damages interrogatories were filed at four o'clock on the specified day.* As the court will discuss hereinafter, these answers, which indicate for the first time the specifics of the individual plaintiffs' claims, reveal a number of weaknesses in plaintiffs' case.

### Dismissal

■ Rule 41(b), Federal Rules of Civil Procedure, states in part: "For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against him."[2] The decision to dismiss for want of prosecution

---

**2.** In addition to the authority granted by Rule 41(b), a federal district court possesses the inherent authority to dismiss an action for want of prosecution, which it may exercise on its own motion when necessary to maintain the orderly administration of justice. *Gonzalez v. Firestone Tire and Rubber Co.*, 610 F.2d 241, 247 (5th Cir. 1980), and cases cited therein.

lies within the trial court's discretion and is based on the facts and record of each particular case. *Lopez v. Aransas County Independent School District*, 570 F.2d 541 (5th Cir. 1978). Dismissal with prejudice, however, is an extreme sanction which is warranted only where "a clear record of delay or contumacious conduct by the plaintiff exists". *Martin-Trigona v. Morris*, 627 F.2d 680 (5th Cir. 1980) (per curiam); *Anthony v. Marion County General Hospital*, 617 F.2d 1164 (5th Cir. 1980); *Gonzalez v. Firestone Tire and Rubber Company*, 610 F.2d 241 (5th Cir. 1980). The Fifth Circuit Court of Appeals has regularly upheld district courts' dismissals of actions under Rule 41(b). *See, Martin-Trigona, supra; Anthony, supra* (Title VII); *Lopez, supra* (§§ 1981, 1983); *Ramsay v. Bailey*, 531 F.2d 706 (5th Cir. 1976), *cert. den.* 429 U.S. 1107, 97 S.Ct. 1139, 51 L.Ed.2d 559 (1977); *Pacheco v. Phelps Dodge Refining Corp.*, 531 F.2d 709 (5th Cir. 1976) (Title VII); *Hyler v. Reynolds Metals Co.*, 434 F.2d 1064 (5th Cir. 1970) (Title VII).

■ The court finds that the record in this case presents a clear pattern of delay and contumacious conduct on the part of plaintiffs and plaintiffs' counsel which justifies dismissal of this action. The facts supporting dismissal are detailed above, and need not be repeated here. In summary, the record shows the following instances of unjustifiable, dilatory and contumacious conduct on the part of the plaintiffs: (1) failure to commence any discovery whatsoever until eighteen months after filing of the complaint; (2) failure to abide by the court's Policies and Procedures; (3) failure to heed admonitions of this court to prepare the case and failure to abide by counsel's promises regarding discovery; (4) failure to follow plaintiffs' own "Schedule of Discovery;" (5) failure to prepare for and bring a motion for class certification as required by Rule 23(c), in spite of the court's directions and counsel's representations that the class issue would be ready for determination soon after May 1, 1979; (6) failure to follow the court's instructions to associate other counsel; (7) failure to follow the court's directions regarding discovery of personnel files, etc., and to review the documents available to plaintiffs' attorneys since January 1980; (8) failure to seek a discovery conference under Rule 26(f), Federal Rules of Civil Procedure, when discovery was at a standstill; (9) failure to complete discovery and be ready for trial by December 1, 1980, as ordered by the court; (10) failure to answer interrogatories as required by Rule 33, Federal Rules of Civil Procedure, and within the time limits ordered by the court. All of the factors which have been deemed sufficient to support a dismissal are present in this case, including significant periods of total inactivity by plaintiffs, repeated warnings that dismissal would result from continued failure to proceed properly, and not one but several failures to obey rules and court orders. See, *Pacheco v. Phelps Dodge, supra*, at 708–709. For all of these reasons, the court finds that this action should be dismissed pursuant to Rule 41(b), Federal Rules of Civil Procedure.

■ It is the further opinion of the court that the continued failure of the plaintiffs to provide discovery justifies dismissal of this action. Rule 37(b)(2)(C), Federal Rules of Civil Procedure, provides that if a party fails to obey an order to provide or permit discovery, the court may dismiss the action or proceeding or any part thereof. In a per curiam opinion in *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), the Supreme Court held that dismissal under Rule 37(b)(2)(C) is justified if based on the entire record counsel shows a "callous disregard" of their discovery responsibilities, as contrasted with the mere inability to comply. *See also, Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). In *National Hockey League*, just as in the present case, crucial interrogatories remained unanswered by plaintiffs for a long period of time despite several extensions and admonitions by the court and promises by the plaintiffs, the district court was extremely patient in its efforts to allow the plaintiffs to comply with the court's discovery order, and the

plaintiffs not only failed to file responses on time, but filed ultimate responses which were found to be inadequate. *See also, In re Liquid Carbonic Truck Drivers Chemical v. Turner,* 580 F.2d 819, reh. den. 588 F.2d 828 (5th Cir. 1978); *Brewer v. Hill,* 453 F.Supp. 67 (N.D.Tex.1978). Plaintiffs' repeated failure to provide discovery seriously prejudiced the ability of the defendants to prepare their case. The court finds from a review of the full record in this case and based on the facts detailed above that plaintiffs' counsel's conduct with respect to both defendants' interrogatories shows such a callous disregard for their discovery responsibilities that dismissal is justified pursuant to Rule 37(b)(2)(C), Federal Rules of Civil Procedure.

Continuously during the course of this protracted litigation Mr. Bishop, lead counsel for the plaintiffs, has sought to excuse the repeated delays in proceeding with this action on the basis of his service in the Georgia General Assembly. Counsel is, of course, to be commended for his service to this state. However, as the court repeatedly advised Mr. Bishop, service in the legislature is no excuse for delay and inadequate representation of his clients. *Cf., Asociacion de Empleados v. Morales,* 538 F.2d 915 (1st Cir. 1976); *Sweeney v. Anderson,* 129 F.2d 756 (10th Cir. 1942).

Plaintiffs' counsel also seek to excuse their delays in completing discovery and answering defendants' interrogatories on the grounds that defendants resisted their discovery of relevant information by refusing to allow counsel to copy all of the requested documents and by moving for a protective order. In the court's opinion plaintiffs' counsel were unreasonable in insisting on copying all of the hundreds of requested documents, particularly in light of the discussions during the December, 1979, conference. The requested documents were made available beginning January 1980. The pending motion of defendant for a protective order did not prevent plaintiffs' counsel from inspecting all of the documents and then marking and copying those relevant to the plaintiffs' case.[3] However, plaintiffs' counsel did not inspect any documents for several months after January, 1980, and did not move for a discovery conference to resolve the problem. In these circumstances the court is astonished that plaintiffs seek to place the responsibility for the delay in discovery on the defendants.

The court is naturally reluctant to foreclose plaintiffs' "day in court." However, the court has bent over backward in this case to allow plaintiffs and their attorneys to pursue the individual and alleged class claims. The court has considered other sanctions short of dismissal, *see generally,* Annot., 4 A.L.R.2d 348 (1949), and finds none of these sanctions to be appropriate in this case. It is the court's best judgment that the continuous dilatory and contumacious conduct of plaintiffs' counsel and their callous disregard of their discovery responsibilities requires dismissal of this case.[4] As the Ninth Circuit appropriately stated in the case of *Von Poppenheim v. Portland Boxing and Wrestling Commission,* 442 F.2d 1047 (9th Cir. 1971),

---

**3.** Rule 34(a), Federal Rules of Civil Procedure, allows a party to inspect and copy any designated documents which contain matters within the scope of Rule 26(b). Rule 26(b) provides that parties may obtain discovery of *any matter which is relevant to the subject matter of the pending action.* (Emphasis supplied).

**4.** A dismissal under Rule 41(b) is not granted on the sufficiency or insufficiency of the merits of a case. However, since harshness of dismissal is a key consideration in the court's decision, it is appropriate that the court consider the strength of a plaintiff's case if such information is available before determining

whether dismissal with prejudice is appropriate. *See, Von Poppenheim v. Portland Boxing and Wrestling Commission,* 442 F.2d 1047, 1052 n.4 (9th Cir. 1971). The court having carefully considered the lengthy depositions of the individual plaintiffs is unconvinced as to the merits of plaintiffs' complaints, and particularly with the merits of their individual claims. In this general regard, according to the affidavit of George Shehane, while only 5.1% of blacks in the Columbus, Georgia, SMSA are supervisory personnel, 16.2% of all supervisory appointments at the Sunshine plant since 1965 have been black.

" . . . the rights of the defendants to be free from [protracted], costly and harassing litigation must be considered. So too must the time and energies of our courts and the rights of would-be litigants awaiting their turns to have other matters resolved. The exact point on that line is incapable of exact definition, but we are satisfied that the present case went beyond it."

The court is not attempting to make an example of plaintiffs' attorneys by dismissing this action—the record of contumacious conduct on the part of plaintiffs' attorneys clearly justifies dismissal. However, the court will take this opportunity to express its growing concern with the increasing tendency of some local attorneys to "bite off more than they can chew" in taking on employment discrimination cases, particularly when they undertake to pursue the case in the form of a class action. These attorneys usually lack the expertise and the financial resources to engage in the extensive discovery and complex statistical analyses necessary to effectively pursue a class action, and they often fail to attempt to associate other counsel with the necessary experience, expertise and resources.[5] In the present case plaintiffs' attorneys' failure, in spite of this court's order, to associate counsel from the Legal Defense Fund made it necessary for the court to deny class status due to plaintiffs' counsel's obvious inability to adequately represent the proposed class. Not only did plaintiffs' counsel in this case lack the expertise and financial resources to pursue a class action, but also counsel was unwilling or unable due to his legislative duties to give the necessary time and effort to plaintiffs' case. In another recent case this court denied class action status due to the inability of the plaintiffs' attorneys to show the prerequisites for a class action, and in a second recent case the court found it necessary to relieve local counsel from the case and direct the Legal Defense Fund to represent the plaintiff class. The court hereby expresses its hope and advice that in the future attorneys taking on employment discrimination cases will conduct those actions with the expertise and diligence such cases require.

## JURISDICTIONAL ISSUES

In addition and in the alternative to the court's decision dismissing this action pursuant to Rules 41(b) and 37(b)(2)(C), Federal Rules of Civil Procedure, the court finds that much of plaintiffs' complaint must be dismissed for lack of jurisdiction. Plaintiffs' Title VII cause of action is jurisdictionally based on the second of two "Notices of Right to Sue" issued by the EEOC to plaintiff John Dowdell. Plaintiff Dowdell filed a charge with the EEOC on February 4, 1975, alleging discrimination in job assignment on the basis of his race and sex, and failure of the Union to properly represent him because of his race and sex. (Def. Exh. 215). Following an investigation a "no reasonable cause" determination and a 90-day right to sue letter were issued by the EEOC on August 31, 1976. (Def. Exh. 215). However, Mr. Dowdell did not file a civil action within the required 90-day period. Instead, after consulting an attorney Mr. Dowdell filed a second attorney-drafted charge with the EEOC on October 9, 1976, alleging race discrimination with regard to job assignments, promotions and the posting of job openings, discipline, and discrimination by the union in failing to fairly represent blacks. (Def. Exh. 209). A third party certification of charge signed by four of the named plaintiffs in this suit was filed on November 20, 1976. A right to sue letter on the second charge was requested by Mr. Dowdell's attorney, Mr. Bishop, on November 1, 1977, and was issued by the EEOC on November 23, 1977.

 The 90-day period for filing suit after receipt of a right to sue letter is a mandatory jurisdictional prerequisite to suit under Title VII, *Prophet v. Armco Steel,*

---

**5.** The court is also concerned with the tendency of some attorneys to engage in extensive, unlimited discovery, *i. e.* "fishing," in an attempt to "create" a class action case of employment discrimination, thereby prolonging the litigation for several years.

*Inc.*, 575 F.2d 579 (5th Cir. 1978), and a Title VII plaintiff cannot be permitted to extend this period by repeatedly filing broad, duplicative charges with the EEOC and obtaining multiple right to sue letters. *See generally, Cleveland v. Douglas Aircraft Co.*, 509 F.2d 1027 (9th Cir. 1975); *Green v. Loggins*, 461 F.Supp. 24 (N.D.Cal.1978); *Ford v. General Motors Corp.*, 452 F.Supp. 355 (E.D.Mo.1978); *Fannie v. Chamberlain Mfg. Corp., Derry Div.*, 445 F.Supp. 65 (W.D.Pa.1977). It is the court's opinion that, at least insofar as the second charge alleges discrimination in job assignment and discrimination by the union in representation, Mr. Dowdell's second charge simply duplicates his first charge which the Commission investigated in 1975. While the October 9, 1976, charge conveniently alleges the date of most recent discrimination as October 8, 1976, Mr. Dowdell has failed to show with respect to his own claim any specific instances of alleged discrimination occurring between the filing of the two charges. Since Mr. Dowdell failed to file suit within ninety days following the receipt of the first right to sue letter, this court has no jurisdiction to consider his duplicated Title VII claims alleging discrimination in job assignment and discrimination by the union. The court does not find the other allegations of Mr. Dowdell's second charge, *i. e.*, discrimination with respect to promotions and discipline, to be duplicitous of his first charge; therefore, this suit was timely filed with respect to those allegations. With respect to the named plaintiffs herein who joined in Mr. Dowdell's second charge by signing the "Third Party Certification of Charge," the charge is not duplicitous and this suit was timely filed.

■ When class certification has been denied, as in the instant action, the individual plaintiffs who continue to seek relief must prove full individual compliance with the statutory and regulatory requirements of Title VII. *See, Inda v. United Air Lines, Inc.*, 565 F.2d 554, 559 (9th Cir. 1977), *cert. den.* 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978). Plaintiff John Anthony did not file or sign a charge on which this action is premised, he was not named in nor did he sign the "Third Party Certification of Charge," and he did not receive a right to sue notice. 42 U.S.C.A. §§ 2000e–5(e) and 5(f)(1). Plaintiff Anthony's failure to meet the jurisdictional prerequisites of Title VII deprives this court of jurisdiction and necessitates dismissal of his Title VII (but not his § 1981) claims.

In order for this court to exercise jurisdiction over any of these plaintiffs' individual Title VII claims, the plaintiff must comply with the requirements of Title VII by alleging an act of discrimination occurring within the one-hundred eighty (180) days beginning April 9, 1976, and ending October 9, 1976, the date of the EEOC charge upon which this suit is based. 42 U.S.C.A. § 2000e–5(e); *Delaware State College v. Ricks*, —— U.S. ——, ——, 101 S.Ct. 498, 503, 66 L.Ed.2d 431, 438 (1980). Thus far no plaintiff has alleged that his claim is based on a *specific* act of racial discrimination occurring during that period. Plaintiffs' supplementary responses to the damages interrogatories of defendant Sunshine filed on January 21, 1981, reveal for the first time some of the specifics of the plaintiffs' claims. These responses cast further doubt on the jurisdictional basis of the plaintiffs' Title VII claims.

Plaintiff Sprueill alleges that on February 6, 1973, he was denied a promotion because of his race, resulting in a reduction of pay beginning October 1, 1974; plaintiff White alleges that on November 12, 1971, he bidded for a position which was awarded to a white with lesser seniority; plaintiff Hodo alleges that he was denied a promotion on the basis of his race sometime in 1978; and plaintiff Dowdell bases his claim for back pay on an allegation that on September 27, 1977, he bid on two jobs which were awarded to whites with less seniority. These alleged discriminatory acts may be circumstantially relevant to establishing current discriminatory practices but, standing alone, these events cannot support a finding of Title VII liability. *See, United Air Lines v. Evans*, 431 U.S. 553, 557, 97 S.Ct. 1885, 1888, 53 L.Ed.2d 571, 578 (1977).

Although plaintiffs have had ample time to make specific allegations regarding their claims, no plaintiff has yet pointed out a specific alleged incident of racial discrimination against him in job assignment, promotion, discipline or in representation by the union within the 180-day period preceding filing of the charge.

Further, the individual plaintiffs' claims do not allege a basis for a pattern of continuing discrimination on the part of either of the defendants. The "critical question in determining the existence of continuing discrimination is whether any present violation exists." *United Air Lines v. Evans, Id.*, 431 U.S. at 557, 97 S.Ct. at 1888, 53 L.Ed.2d at 578. In *Dupree v. E. J. Brach & Sons*, 77 F.R.D. 3, 6 (N.D.Ill.1977), a case involving, as here, alleged discriminatory promotions, the court rejected a continuing violation theory reasoning that, while the alleged denials of promotions have a constant and present effect in that the plaintiff may be receiving less pay, the violations occurred, if at all, when the defendant allegedly promoted white, less qualified officials over blacks. This same reasoning applies to the plaintiffs' claims in this case. Any racial discrimination against these individual plaintiffs by these defendants occurred at the time the individual plaintiff was denied a promotion or a job assignment because of his race, or received harsher discipline than that received by a white in the same circumstances, or when the union failed to properly prosecute the plaintiffs' grievance because he was black. Plaintiffs' claims are not a sufficient basis for a finding of continuing discrimination; [6] therefore, each of the plaintiffs must show a specific act of discrimination against him occurring within the 180-day period preceding the EEOC charge in order to establish jurisdiction in this court under Title VII. Plaintiffs have failed to do so.

The remaining individual plaintiffs seek compensatory damages due to the stigma and mental pain and suffering endured by plaintiffs as a result of the alleged discriminatory practices on the part of defendants. Compensatory damages are not authorized by Title VII. *Schofield v. Stetson*, 459 F.Supp. 998 (M.D.Ga.1978). However, recovery of compensatory damages is permitted under § 1981, *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Claiborne v. Illinois Central Railroad*, 583 F.2d 143, 154 (5th Cir. 1978). It is not necessary to decide whether the applicable statute of limitations for the recovery of compensatory damages under § 1981 is borrowed from Ga. Code Ann. § 3–704 or from Ga. Code Ann. § 3–1004,[7] since both statutes prescribe a two-year limitation period. Thus, in order for compensatory damages to be recoverable under § 1981, the event giving rise to the claim for damages must have occurred within two years of the February 14, 1978, filing of the complaint in this court. Thus far only plaintiff Dowdell has alleged a specific instance of discrimination occurring during the two-year period preceding filing of this suit.

Finally, the individual plaintiffs seek further equitable relief in addition to back pay, including a declaratory judgment that defendants are engaging in racially discriminatory practices in violation of Title VII and § 1981, an injunction prohibiting such practices in the future, and upgraded positions. Again, it does not appear that the court has jurisdiction of plaintiffs' claims under Title VII. Nevertheless, the court does have jurisdiction of the plaintiffs' claims for equitable relief under § 1981, with the exception of two plaintiffs' back pay claims. In *United States v. Georgia Power*, 474 F.2d 906 (5th Cir. 1973), and *Franks v. Bowman Transportation Co.*, 495 F.2d 398 (5th Cir. 1974), rev'd on other

---

**6.** A Title VII plaintiff may prove continuing discrimination by showing, for example, that blacks receive less pay than whites since the discriminatory differential in pay occurs each pay period. In this case it appears that among hourly paid employees at the Sunshine plant blacks receive an average of $.03 more per hour than whites. (Shehane affidavit, para. 8).

**7.** Ga. Code Ann. § 3–1004 provides that actions for injuries to the person shall be brought within two years after the right of action accrues.

118

grounds, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444, the Fifth Circuit held that Ga. Code Ann. § 3–704 is the appropriate statute of limitations for § 1981 actions. That section provides:

"All suits for the enforcement of rights accruing to individuals under statutes, acts of incorporation, or by operation of law, shall be brought within 20 years after the right of action shall have accrued: Provided, however, that all suits for the recovery of wages, overtime or damages and penalties accruing under laws respecting the payment of wages and overtime, prior to March 20, 1943, shall be brought within two years from such date; and that all such suits for the recovery of wages, overtime or damages and penalties accruing under laws respecting the payment of wages and overtime, subsequent to March 20, 1943, shall be brought within two years after the right of action shall have accrued." (Acts 1855–6, p. 234; 1943, p. 333).

There is a split of authority among the district courts in Georgia as to the application of § 3–704, some courts holding that only the two-year provision of § 3–704 is applicable. *See, Foster v. Mead Packing Intd.,* 14 F.E.P. 348 (N.D.Ga.1976); *Williams v. Burns Intl. Security Services,* 13 F.E.P. 1505 (S.D.Ga.1976); *Roberts v. H. W. Ivey Construction Co.,* 408 F.Supp. 622 (N.D.Ga.1975). However, having carefully reviewed the applicable decisions, this court agrees with those courts which hold that § 3–704 must be applied in § 1981 cases in a bifurcated manner so that an action for back pay is barred after two years, but an action for equitable relief under § 1981 is barred only after twenty years. *See, Harris v. Anaconda Aluminum,* 479 F.Supp. 11 (N.D.Ga.1975) (Moye, J.); *Ivey v. Western Electric Co.,* 11 E.P.D. ¶ 10,900 (N.D.Ga. 1975).

Applying this bifurcated statute of limitations to plaintiffs' claims under § 1981, the court finds based upon plaintiffs' answers to defendant Sunshine's damage interrogatories that plaintiff Sprueill's claim for back pay, predicated on events occurring in 1973 and 1974, is barred since those events occurred over two years before the February 14, 1978, filing of this lawsuit. Plaintiffs White and Hodo make no back pay claims. Plaintiff Dowdell's claim for back pay, based on an event occurring in September, 1977, is not barred by the two-year statute of limitation. Plaintiff Anthony's claim for back pay under § 1981, founded upon an alleged act of discrimination occurring in September, 1977, also is not time barred. Since each of the individual plaintiffs alleges an act of discrimination by the defendant Sunshine occurring within twenty years of the February, 1978, filing of this suit, the court does have jurisdiction over the plaintiffs other claims for equitable relief under § 1981.[8]

## CONCLUSION

In summary, based upon plaintiffs' record in this case of dilatory and contumacious conduct in failing to prosecute and to comply with the orders of this court and with the Federal Rules of Civil Procedure, and plaintiffs' callous disregard of their discovery responsibilities, the court holds that this action should be dismissed pursuant to Rules 41(b) and 37(b)(2)(C), Federal Rules of Civil Procedure. In addition and alternatively, the court finds based upon the facts and allegations presently before it that this court has jurisdiction of the following claims only: (1) the remaining five plaintiffs' claims for equitable relief under § 1981; (2) plaintiffs Dowdell's and Anthony's claims under § 1981 for back pay; and (3) plaintiff Dowdell's § 1981 claim for com-

**8.** Defendants argue that plaintiffs' § 1981 claims should be dismissed on the basis of laches. In *Franks v. Bowman Transportation Co.,* supra, the Fifth Circuit stated that the equitable doctrine of laches could be applied in a proper case to bar § 1981 claims. *See, Harris v. Anaconda Aluminum, supra.* Laches is composed of two elements: inexcusable delay by a plaintiff in asserting his rights and undue prejudice to defendant as a result. *Bernard v. Gulf Oil Co.,* 596 F.2d 1249, 1256 (5th Cir. 1979). The facts before the court are insufficient at the present time to determine whether plaintiffs are guilty of laches with respect to their § 1981 claims.

pensatory damages. With respect to Mr. Dowdell, the court has jurisdiction only of his individual claims of discrimination in promotion and in discipline, since his other claims are duplicitous of his first charge. Since none of the individual plaintiffs have alleged a specific act of discrimination occurring within the 180-day period preceding the October 9, 1976, EEOC charge, this court has no jurisdiction of any of the individual plaintiffs' claims under Title VII.

Accordingly, defendants' motions to dismiss this action pursuant to Rules 41(b) and 37(b)(2)(C). Federal Rules of Civil Procedure, is hereby GRANTED.